## Glickman, Appellant, *v.* Prudential Insurance Company of America.

Argued October 30, 1942.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, RHODES, HIRT and KEN-
WORTHEY, JJ.

*George F. Douglas,* for appellant.

*Kendall H. Shoyer,* with him *Andrew C. Dana,* for
appellee.

OPINION BY BALDRIGE, J., December 11, 1942:

The court below, in this action brought by a bene-
ficiary in a policy of insurance issued on the life of
her husband by the appellee, gave binding instructions

to the jury to render a verdict in favor of the plaintiff in the sum of $14.44 which was the amount of the premium paid by the insured plus accrued interest. The motion for a new trial which followed was dismissed and judgment entered on the verdict.

Max D. Glickman made an application for insurance on February 24, 1940. A medical examination was made March 5, 1940, and a policy dated March 19, 1940, was delivered on March 22, 1940. Glickman died suddenly July 9, 1940, as a result of coronary occlusion at the age of 54 years. The defendant denied liability except for the amount of the premium paid on the ground that false and fraudulent answers were made by the insured to the following questions in the application: "9a. Have you consulted, or been attended by a physician or other practitioner during the past three years? Give dates, complaints, doctors' or practitioners' names and addresses. *No.* 10a HAVE YOU EVER HAD (Answer Yes or No. If yes, underscore disease or diseases and give particulars in space below) ...... Palpitation of heart, shortness of breath, pain in chest or heart disease? *No.* ...... 10b. Do the answers to all parts of questions 6, 7, 9, and 10a, with details given in space below, constitute a complete statement of all your illnesses, surgical operations and sojourns in hospitals, sanitaria and other institutions? *Yes.*"

The appellant complains that the court erred (1) in not permitting certain lay witnesses to testify as to the insured's apparent good health and to his lack of knowledge of bad health; (2) in refusing the interrogation of a physician as to the report he made to the insurance company of his examination of the applicant for a policy; and (3) in failing to submit to the jury the question whether the insured in good faith answered the questions submitted to him.

1. If the question of the applicant's good health is

for the jury's consideration, lay witnesses may testify as to certain matters involving his health, his apparent physical condition, and to obvious symptoms, but their testimony may not be extended to matters involving the existence or non existence of a disease which is discoverable only through the training and experience of a medical expert as in this case: *Baum v. Metropolitan Life Insurance Company*, 144 Pa. Superior Ct. 37, 41, 19 A. 2d 486; *Smolinsky, Adr. v. Metropolitan Life Insurance Company*, 149 Pa. Superior Ct. 72, 77, 26 A. 2d 131.

Dr. Flynn's testimony and his office records, which were documentary evidence (*Freedman v. Mutual Life Insurance Company of New York*, 342 Pa. 404, 413, 414, 21 A. 2d 81) and to which reference will be made hereafter, established that Glickman suffered from a heart disease. This evidence could not be overcome by the testimony of lay witnesses that the deceased was able to work and appeared to be in good health. Furthermore, their testimony was not offered for the purpose of contradicting the documentary evidence which showed that the insured had been previously treated for certain complaints: *Loder v. Metropolitan Life Insurance Company*, 128 Pa. Superior Ct. 155, 158, 193 A. 403. The court cannot be convicted of error for excluding the testimony of these lay witnesses.

2. The plaintiff, in an endeavor to make out a case in chief, made an offer to prove by Dr. Blackburn, who made the physical examination of the insured for the defendant, that he made a report to the company favorable to the applicant. The objection to the offer was sustained. Dr. Blackburn was the agent of the insurance company (*Baldi v. Metropolitan Insurance Company*, 18 Pa. Superior Ct. 599, 606) and any report he made to his principal, which was signed by himself, not by the applicant and was of a confidential nature, had nothing to do with the issues in dispute.

The plaintiff based her action on the policy of insurance with the copy of the application attached. This report was not a part of the policy upon which the plaintiff was relying (*Moncur v. Western Life Indemnity Co.*, 269 Pa. 213, 215, 112 A. 476) and it was not offered to contradict or rebut any evidence offered by defendant.

The trial judge is given a wide discretion in the admission of evidence and his action in sustaining the defendant's objection to the offer was not in our judgment a reversible error.

3. The uncontradicted documentary evidence offered by the defendant established that the insured was guilty of such fraud that his beneficiary was barred from recovering under the policy. Binding instructions for the plaintiff in the amount of the premiums paid were therefore properly given.

It appears from the testimony of Dr. Flynn, called by the defendant, that Glickman came to see him on January 14, 1940, complaining of shortness of breath, pain in the chest, which was felt on exertion and the doctor upon an examination found that he had a weak heart with irregularity in its action. The patient was also suffering with a cold but apparently it was rather slight as the doctor did not think it of sufficient importance to make a note thereof in his office record book as he did the other complaints and symptoms together with a diagnosis of angina pectoris and probably chronic myocarditis. He prescribed theobromine to dilate the blood vessels and thus lessen the work for the heart. Glickman returned the following day complaining of a pain in the left hip which the witness testified he concluded was attributable to the cold. The doctor was called to the Glickman home on the 19th and 21st and found the patient had a heavy cold and was confined to his bed. Glickman visited the doctor's office on January 29, when the shortness of

breath had gone but the pain in the chest was present and he recommended the taking of phenobarbital, which he had previously prescribed, be continued. On February 16, 1940, Glickman again saw the doctor. He had no complaints then but the doctor told him to continue taking theobromine and advised him to avoid "extra exertion, like going up stairs, getting excited, carrying heavy burdens and all that like—the regular routine where you want to build a patient up, especially if they have weakness." The last entry in his records disclosed that he thought the patient had a hypertensive cardiac disease. Each time he saw Glickman he took his blood pressure and pulse, which although they fluctuated somewhat, were always fairly normal. The doctor did not tell Glickman that he had heart trouble as that was not his practice, but he did inform him that his heart needed strengthening as it was weak, and that he should be under treatment for a while to have it built up. "That, of course, was along with other conditions that needed correction there."

Dr. Moriarty, the coroner's physician, testified that he performed a post mortem examination and found that the cause of death was due to coronary occlusion; that he found the heart and coronary arteries were in a "moderately advanced diseased condition of some standing." Ordinarily the question of the truth or the falsity of the answers in an application and whether or not they are given by the insured in good faith is for the jury. If, however, there is sufficient documentary evidence that the policy was issued in reliance on false and fraudulent statements made by the insured under such circumstances that he must have been aware of their falsity, the court should direct a verdict for the insurer: *Evans v. Penn Mutual Life Insurance Company*, 322 Pa. 547, 555, 186 A. 133.

In order to avoid the policy for misrepresentations the insurer must establish that the statements relied

upon were false and fraudulent, and the insured knew that they were false when he made them: *Lilly v. Metropolitan Life Insurance Company*, 318 Pa. 248, 251, 177 A. 779; *Evans v. Penn Mutual Life Insurance Company*, supra, p. 553.

Facts recorded by the prescribing doctor at the time the examination was made for the purpose of giving medical treatment in the course of his professional business are admissible as documentary evidence in the same respect and subject to the same restrictions as hospital records: *Freedman v. Mutual Life Insurance Company of New York*, supra, pp. 413, 414. The inquiries in this application as to the attendance by a physician and as to suffering from shortness of breath, pain in the chest, and heart disease, included in inquiries 9a and 10a, are material to the risk to be assumed by an insurer as they are not trivial ailments: *Baxter v. New York Life Insurance Company*, 115 Pa. Superior Ct. 287, 293, 175 A. 899; *Loder v. Metropolitan Life Insurance Company*, supra, p. 160; *Anastasio v. Metropolitan Life Insurance Company*, 149 Pa. Superior Ct. 414, 27 A. 2d 510.

This applicant consulted a physician on six different occasions within less than two months before he applied for insurance, complaining that he was suffering from shortness of breath, and pain in the chest upon exertion. He must have known that his answers, stating that he had not consulted or been attended by a physician within the last three years and that he had no pain in the chest or shortness of breath, were false and fraudulent. As these essential facts were established by uncontradicted documentary evidence the defendant successfully carried the burden imposed upon it under the law.

We find no reason to disturb the action of the court in giving binding instructions for the plaintiff in the sum of $14.44 and refusing to grant a new trial.

Judgment is affirmed.