## Commonwealth *v.* Smith, Appellant.

Argued March 27, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*John B. Hannum*, with him *Theodore O. Rogers*, and *Pepper, Hamilton & Scheetz*, for appellant.

*Samuel J. Halpren*, District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., June 13, 1962:

This is an appeal from the judgment of sentence of the Court of Quarter Sessions of Chester County by the defendant, E. Newbold Smith, after his conviction on a charge of assault and battery; and from the denial by the court below of his motion for a new trial.

E. Newbold Smith was charged and tried under the

following bills of indictment: No. 210, Obstructing officer in the Execution of Process; No. 210A, Assault and Battery, Aggravated Assault and Battery; No. 211, Obstructing Officer in the Execution of Process; No. 211A, Assault and Battery; and No. 211B, Assault and Battery. A verdict was directed for the defendant in No. 210. He was acquitted by the jury in Bills Nos. 211, 211A and 211B, and of the count of aggravated assault and battery in No. 210A. He was convicted of the count of assault and battery in No. 210A.

After the denial of his post trial motion he was sentenced to pay the costs of prosecution and a fine of $1000 and to imprisonment for 30 days.

The conviction grew out of a fight that occurred between the defendant, E. Newbold Smith, who was driving his automobile on State Highway route 202 where it intersected State Highway route 926, and Frank Elliott, Chief of Police of Thornbury Township, Chester County. At the time the defendant was alone in his car and Elliott was in summer uniform, without his hat. Elliott started after Smith's car when he failed to stop on a shouted order from a gas station as he crossed a medial strip.

At the intersection the defendant stopped for a red light and Elliott overtook him and commanded him to pull over. The defendant asked, "What for?" and Elliott is alleged to have said "pull over you ------", using a filthy epithet. The defendant turned right on route 926, pulled off the road and Elliott stopped behind him. Elliott denied the epithet, testifying that he told him, "pull over, I want to talk to you."

Both men got out of their cars and a fight ensued. The evidence concerning aggression and the details of the encounter were conflicting. The defendant claimed Elliott struck him over the head with a blackjack; that Elliott struck him again and in defending himself he knocked Elliott down. Elliott denied the blackjack in-

cident, alleged the defendant knocked him to the ground and beat him about the face. The struggling parties were separated by witnesses Kramer and Jones, who pulled the defendant off Elliott. Both participants sustained injuries in the fight. The defendant was then taken in Elliott's car to the West Chester police station, where there was more violence. This violence was resolved in the defendant's favor by the jury.

The defendant is larger and heavier than Elliott. Elliott wore glasses, was carrying a blackjack and a pistol. The witnesses Kramer and Jones did not see the beginning of the fight.

The case of the Commonwealth on the issue of credibility between the defendant and the police officer as to aggression was bolstered by the testimony of a Miss Betty Sweet and Mrs. Yvonne Corcoran, who were driving in a southerly direction on route 202 and who had stopped for the red light at the cross-roads. These women volunteered as witnesses for Elliott and gave signed statements to the police. Miss Sweet testified that within seconds after the men left their cars Elliott was knocked to the ground and repeatedly punched. Mrs. Corcoran testified that the defendant "came down with his fist or arm" on the police officer; that it was the tall man did the striking. The contentions of the defendant in his appeal to this Court seeking a new trial are: "(1) the limitations imposed by the trial judge on cross-examination of Miss Sweet and Mrs. Corcoran—alleged disinterested witnesses for the Commonwealth—whose statements to the F.B.I. were denied the defendant and further whose bias could not be established because the trial judge denied the defendant the right to prove this bias through Stefanchick, investigator of defense counsel and former State Police sergeant."

At the outset, it is apparent that the appellant labors under a heavy burden in this appeal to establish

that the court below abused its discretionary power to refuse a new trial where the reasons advanced to establish this are also based on the discretionary power of the court. The scope of cross-examination is a matter largely within the discretion of the trial judge for which an abuse of discretion is not ground for reversal unless it results in an apparent injury. Kessler Criminal Procedure in Pa. Vol. 1, page 43.

"A trial judge is necessarily vested with broad powers to control the course of the trial. . . . The scope of cross-examination is largely within the sound discretion of the trial judge, and unless the exercise of this discretion, although erroneous, results in apparent injury, it is not ground for reversal." *Com. v. Fine,* 166 Pa. Superior Ct. 109, 115, 70 A. 2d 677 (1950). See also: *Com. v. Cano,* 182 Pa. Superior Ct. 524, 549, 128 A. 2d 358 (1956).

We are unable to find such injury in this case where the defendant was acquitted of all charges except one count of simple assault and battery, and where there are over 300 pages of the printed record of the testimony of the witnesses. There was sufficient competent testimony, if believed by the jury, to support the verdict without any witnesses except the police officer; and the witness Jones corroborated him partially by testifying that when he got to the scene the appellant was on top of Elliott striking him and that he pulled him off.

We are not impressed by the argument of a box score made by the appellant that the court below sustained the Commonwealth's objections and overruled appellant's objections 36-6, in favor of the Commonwealth, without anything more. Our examination of this record indicates that there were much too many improper questions asked and that the court below properly sustained them. We are convinced that the appellant had a fair trial.

However, the chief complaints of the appellant center around attempts by him to show bias, prejudice and interest on the part of the two alleged disinterested women motorists, Mrs. Yvonne Corcoran and Miss Betty Sweet, and whether the limitations placed on their cross-examination were so exacting as to amount to such an abuse of discretion as to deny the appellant a fair trial.

The appellant, in trying to establish the bias of the witness, Yvonne Corcoran, attempted to cross-examine her as to a visit by Michael Stefanchick, an investigator employed by the appellant. The questions to be put to her as contained in an offer by the appellant were to show that when he visited her she refused to talk to him about the incident. He wanted to ask her whether she had been told by "anybody, officer", not to talk about the matter. He further wanted to ask her about a phone call she made, out of the presence of his investigator. On the return from making the phone call she told the investigator "I won't say anything to you."

The court below took the position that the offer of proof submitted by the appellant did not tend to show interest, prejudice or bias and rejected it. "The refusal to give Mr. Stefanchick the information he desired, as shown by Mr. Hannum's statement, was obviously not motivated by a feeling of bias or partisanship of the witness against the defendant, but rather stemmed from a source other than her own desire to withhold any information." She could certainly have refused giving any information to anyone, having already made a statement to the authorities, without it being proof of bias. The court further said, "There was no offer to show that any Commonwealth witness or the District Attorney had advised the witness not to disclose her testimony. Under these circumstances it cannot be said that the defendant was prejudiced by the exclusion of the evidence."

But if the court had been restrictive in refusing the appellant the right to ask these questions and so technically incorrect, it is difficult to see how the exclusion of testimony of such doubtful relevancy so injured the appellant as to amount to reversible error.

The other matter which the appellant emphasizes in this appeal concerns the refusal of a subpoena duces tecum directed to the office of the Federal Bureau of Investigation to obtain certain records and photographs taken in connection with an investigation of this incident. It seems that the federal investigation had to do with confidential matters not directly connected with the incident itself. The purpose of the subpoena was to obtain statements alleged to have been made by the two women to the F.B.I. concerning the incident which the appellant contended contained discrepancies when compared to the statements made to the District Attorney. However, when asked concerning the discrepancies, it was stated "and it is my belief that her testimony or her statement to the F.B.I. does not include any observation of who struck the first blow, whereas today, she states that Mr. Smith did."

The same discrepancy appears in the statement of Betty Sweet given the District Attorney which did not contain a statement as to who struck the first blow and she was examined concerning it, explained it and was vigorously cross-examined as to the discrepancy. Her credibility was for the jury.

The court below refused the subpoena on the ground that there was nothing in the request that disclosed any matters which would be material and relevant to the defense, and for the further reason that the Attorney General of the United States had not waived the confidential nature of the files.

Again we can see no error in the denial of the subpoena under the petition in this case and again, even if there was technical error in its denial, we cannot

see by any stretch of the imagination how this appellant could possibly be harmed when he had both witnesses under oath and the very same discrepancy that he expected to unearth in the statements given the F.B.I. in the District Attorney's statement and concerning which, the witness was vigorously examined and cross-examined.

Judgment affirmed.