422 A.2d 1369

**COMMONWEALTH of Pennsylvania**

v.

**Albert NIEMETZ, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1979.

Filed Nov. 26, 1980.

Petition for Allowance of Appeal Denied Feb. 3, 1981.

Vincent R. Baginski, Pittsburgh, for appellant.

Kemal Mericli, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before PRICE, CAVANAUGH and WATKINS, JJ.

PRICE, Judge:

Appellant, Albert Niemetz, appeals from the judgment of sentence imposed after a jury convicted him of rape,[1] involuntary deviate sexual intercourse,[2] indecent assault,[3] and corruption of minors.[4] Post–trial motions for a new trial and in arrest of judgment were denied and appellant was sentenced to a term of imprisonment of from seven and one–half to fifteen years.

Appellant raises several contentions on appeal. Initially, appellant argues that the lower court erred by denying both his motion to quash the information and his demurrer.[5] Appellant further contends that he was denied due process of law as a result of various evidentiary rulings. First, appellant argues that the trial judge erroneously permitted the victim to testify concerning occurrences of rape and other similar activities specified in the information without identifying the dates of such occurrences. Second,

1. 18 Pa.C.S. § 3121(1).

2. 18 Pa.C.S. § 3123(2), (5).

3. 18 Pa.C.S. § 3126(1).

4. 18 Pa.C.S. § 3125.

5. Because appellant presented a defense following the adverse ruling on his demurrer, the validity of the trial court's ruling thereon is no longer an appealable issue. *See Commonwealth v. Ilgenfritz*, 466 Pa. 345, 347 n. *, 353 A.2d 387, 388 n. * (1976); *Commonwealth v. Moore*, 398 Pa. 198, 201–02, 157 A.2d 65, 68 (1959). However, we will treat appellant's challenge on this issue as one directed to the sufficiency of the evidence, *see Commonwealth v. Dussinger*, 478 Pa. 182, 187, 386 A.2d 500, 502 (1978), since "[a] demurrer and a claim of insufficiency of the evidence differ only with respect to the stage of the proceedings at which they are raised." *Commonwealth v. Duncan*, 473 Pa. 62, 66 n. 2, 373 A.2d 1051, 1052–53 n. 2 (1977).

appellant contends that it was error to admit evidence of any sexual conduct occurring beyond the pertinent period of limitation. Last, appellant asserts that he was denied due process by the trial court's refusal to permit cross--examination of the victim concerning whether he was or was not circumcised. Finding no merit in these contentions, we affirm the judgment of sentence.

Perceived in the light most favorable to the Commonwealth, *see Commonwealth v. Lee*, 460 Pa. 374, 333 A.2d 773 (1975); *Commonwealth v. Irvin*, 260 Pa.Super. 122, 393 A.2d 1042 (1978), the following was adduced at trial. Bonnie Jean Wilmot, the victim herein, was appellant's stepdaughter. Only eighteen years of age at the time of trial, Ms. Wilmot nonetheless related a long and sordid narrative of her childhood. Her testimony revealed that she first met appellant when she was between five and six years old and in the first grade. As a nine year old third grade student she was forced to perform fellatio upon appellant and, as early as the fourth grade, was obliged to submit to sexual intercourse with him. Beatings and threats of violence forced Ms. Wilmot to submit to appellant's advances more frequently and by the time Ms. Wilmot was in the seventh grade, sexual contact with her stepfather became routine. She became pregnant and delivered a baby, Albert Bernard Niemetz, on April 5, 1976, when she was a sixteen year old ninth grader and had a second pregnancy terminated by an abortion on May 14, 1977. Sexually abused by appellant for the last time on or about June 10, 1977, Ms. Wilmot left her home and sought refuge in a rape crisis center on August 27, 1977. As a result of these incidents, appellant was tried and convicted of rape, involuntary deviate sexual intercourse, indecent assault and corruption of minors.[6] This appeal followed.

Initially, appellant contends that the lower court erred in denying both his pretrial application for a rule to quash and his application to quash the information. We disagree.

**6.** Appellant was acquitted on charges of simple assault, 18 Pa.C.S. § 2701, and terroristic threats, 18 Pa.C.S. § 2706.

The information in the instant case provided, in pertinent part, that the alleged offenses occurred "on (or about) divers dates beginning in 1972 and continuing until August, 1977." Appellant thereafter requested a Bill of Particulars to obtain the specific dates, times and places of the pertinent offenses. The Commonwealth responded by explaining that it was unable to state with more specificity the dates of the offenses "except to say that the offenses occurred mostly on weekends." Appellant's bedroom in a former residence on Bogg's Avenue, the victim's sister's bedroom in a one time family residence on Carnahan Road and appellant's present home on Lucina Avenue in Pittsburgh were named as principal locations of the named offenses. Perceiving that the Commonwealth's response was inadequate, appellant filed a pretrial application for a rule to quash the information. This application was denied by the Honorable Robert E. Dauer. Appellant thereafter filed an Application to Quash attacking the validity of the information rather than the Commonwealth's response to his Bill of Particulars. This latter application was likewise denied in a well–reasoned opinion by the Honorable Zoran Popovich.

As regards appellant's contention that his Application for a Rule to Quash was improperly denied, we note that appellant did not question the validity of the information,[7] but rather challenged only the lack of specificity in the Commonwealth's response to his Bill of Particulars. An information, valid on its face, is not rendered demurrable or subject to a motion to quash by a defective response to a bill of particulars, *see Commonwealth v. Hershman*, 171 Pa.Super. 134, 139, 90 A.2d 314, 317 (1952), *aff'd*, 374 Pa. 311, 97 A.2d 777 (1953). Judge Dauer properly denied appellant's application, therefore, unless the information was defective,

7. "A motion for a bill of particulars does not question the sufficiency of an indictment but rather assumes its validity." *Commonwealth v. Hershman*, 171 Pa.Super. 134, 139, 90 A.2d 314, 317 (1952), *aff'd*, 374 Pa. 311, 97 A.2d 777 (1953). Thus, even had appellant intended to attack the information, requesting a bill of particulars would not have been the appropriate means by which to do so.

in which case, the second application, the application to quash, should have been granted.

> To be valid, an information must contain, *inter alia,* "the date when the offense is alleged to have been committed *if the precise date is known,* and the day of the week *if it is an essential element of the offense charged,* provided that *if the precise date is not known* or if the offense is a continuing one, *an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient* . . . . "

Pa.R.Crim.P. 225(b)(3) (emphasis added). The information in the instant case averred the commission of offenses "on (or about) divers dates beginning in 1972 and continuing until August, 1977." This course was adopted because the Commonwealth was unable to "state the dates on which the offenses occurred with any more specificity." Since time is not of the essence in the crimes for which appellant was charged and convicted, *see Commonwealth v. Yon,* 235 Pa. Super. 232, 341 A.2d 169 (1975); *Commonwealth v. Rouse,* 207 Pa.Super. 418, 218 A.2d 100 (1966), the pertinent allegation contained in the information appears to fit precisely Rule 225's proviso that an allegation that an offense was committed "on or about *any* date within the period fixed by the statute of limitations shall be sufficient" when (1) time is not of the essence and (2) a precise date is unknown.

The decision to grant or deny a motion to quash is within the sound discretion of the trial judge and will be reversed on appeal only where there has been a clear abuse of discretion. *See Commonwealth v. Hackney,* 117 Pa.Super. 519, 522, 178 A. 417, 418 (1935); *Commonwealth v. Schwartz,* 56 Pa.D. & C.2d 147 (C.P.Phila.1972). A court, moreover, "should not sustain a motion to quash . . . except in a clear case where it is convinced that harm has been done to the defendant by improper conduct that interfered with his substantial rights." *Commonwealth v. O'Brien,* 181 Pa. Super. 382, 397, 124 A.2d 666, 674 (1956), *appeal dismissed, Commonwealth v. Laughlin,* 389 Pa. 109, 132 A.2d 265 (1957), *citing Commonwealth v. Brownmiller,* 141 Pa.Super. 107,

116, 14 A.2d 907 (1940). In view of the rule in this Commonwealth that the Commonwealth need not prove the commission of a crime on the date previously alleged in the information, *see Commonwealth v. Morrison*, 180 Pa.Super. 121, 118 A.2d 258 (1955), it would be patently absurd to suggest that a more rigorous test of specificity must be used in ruling on a motion to quash. Moreover, we do not believe that it would serve the ends of justice to permit a person to rape and otherwise sexually abuse his child with impunity simply because the child has failed to record in a daily diary the unfortunate details of her childhood. Since the facts of the instant case preclude a definitive enumeration of events and because the record belies any assertion that the Commonwealth sought to abuse the flexibility of Rule 225,[8] we hold that it was not an abuse of discretion to deny the motions.

Appellant next contends that the trial court improperly permitted the victim to testify to incidents of rape without requiring her to specify the dates of such occurrences. Appellant's reliance on *Commonwealth v. Devlin*, 460 Pa. 508, 333 A.2d 888 (1975) and *Commonwealth v. Levy*, 146 Pa.Super. 564, 23 A.2d 97 (1941), however, is misplaced. Rather than positing an automatic litmus test for determining the admissibility of evidence, those cases hold that a conviction cannot stand unless the Commonwealth establishes, *to a reasonable degree of certainty*, both the commission of an offense and the approximate date thereof. Thus, in *Devlin*, where the defendant was charged with a *single* incident of sodomy, the conviction was reversed because the Commonwealth alleged and proved only that the offense occurred at some point during a fourteen month period of time. In *Levy*, a conviction was reversed by this court because the Commonwealth alleged in its indictment that two incidents of sodomy occurred four days apart, the victim testified that the events occurred on two successive evenings but gave

8. The record reveals that the Commonwealth attempted to apprise appellant's counsel of all specific details which the Commonwealth possessed concerning the offenses charged up to the time of trial. *See* N.T. 3–9.

conflicting testimony as to their dates, and the victim's sister failed to corroborate any of the dates previously specified. Pivotal to both decisions was the fact that neither case involved a *continuando*, as does the instant case, and thus the offenses alleged were more susceptible to being dated within a "reasonable degree of certainty" than are those involved herein.

■ Our conclusion on this issue does not, moreover, mark a departure from precedent. Rather, this conclusion evidences our understanding of an attempt to adhere to the guidelines articulated by the supreme court in *Commonwealth v. Devlin, supra.* The *Devlin* court posited that,

> "[W]e cannot enunciate the exact degree of specificity in the proof of the date of a crime which will be required or the amount of latitude which will be acceptable. *Certainly the Commonwealth need not always prove a single specific date of the crime. . . .* Any leeway permissible would vary with the nature of the crime and the age and condition of the victim, balanced against the rights of the accused.[3]

> 3. *See* Dissenting opinion of Spaeth, J., below, *Commonwealth v. Devlin,* 225 Pa.Super. 138, 141, 310 A.2d 310, 312 (1973)."

*Commonwealth v. Devlin, supra* 460 Pa. at 516, 333 A.2d at 892 (emphasis added) (citations omitted). The pertinent portion of Judge Spaeth's dissenting opinion is as follows:

> "I do not wish to imply that when dealing with a *victim who is a young child,* the commonwealth must always prove the actual date of the crime . . . .

> . . . The *fact that the victim cannot set a date for the crime should not necessarily be fatal to the Commonwealth's case, thus making the assailant virtually immune from prosecution.*"

*Commonwealth v. Devlin,* 225 Pa.Super. 138, 141–42, 310 A.2d 310, 312 (1973) (Spaeth, J., dissenting) (emphasis added). In view of the victim's age, the nature of the crimes charged and the absence of prejudice to appellant's case, therefore, we conclude that the victim's testimony was properly admitted into evidence.

Appellant next contends that the trial court erred by denying his demurrer. As we have already noted, this argument is more appropriately styled a challenge to the sufficiency of the evidence.[9] In reviewing the sufficiency of the evidence, we must first appraise the evidence in the light most favorable to the Commonwealth, accepting as true all evidence upon which the fact finder could properly have based its verdict together with all reasonable inferences derived therefrom, *Commonwealth v. Moore*, 261 Pa.Super. 92, 95, 395 A.2d 1328, 1330 (1978); *see, e. g., Commonwealth v. Williams*, 476 Pa. 557, 383 A.2d 503 (1978); *Commonwealth v. Rose*, 463 Pa. 264, 344 A.2d 824 (1975), and then determine whether the trier of fact could reasonably have found that all elements of the crimes charged had been established beyond a reasonable doubt. *Commonwealth v. Boyd*, 461 Pa. 17, 24, 334 A.2d 610, 613 (1975); *Commonwealth v. Moore, supra.* For the reasons that follow, we conclude that the lower court correctly denied the demurrer.

■ Admittedly, the victim at no time unequivocally testified as to an *exact* date on which she was sexually abused. She testified that she first performed oral sodomy in the early springtime of her third year in school, (N.T. 37–45), and that she was obliged to submit to sexual intercourse as early as the fourth grade. (N.T. 42–45). The least specific dated allegation was that such an offense occurred around Christmas of 1973, (N.T. 48–52), and again in late June or early July of 1975 when Ms. Wilmot was alone on a fishing trip with her stepfather in Oil City.[10] (N.T. 57).

9. *See* note 5, *supra.* Because "[i]t is well established that the Commonwealth must show the date of an alleged offense with 'reasonable certainty' in order to withstand a demurrer," *Commonwealth v. Speicher*, 259 Pa.Super. 433, 440, 393 A.2d 904, 907 (1978), and since appellant's argument on this issue focuses on the absence of proof of a specific date, we will likewise limit our discussion to the specificity of evidence on the dating of the offenses charged.

10. Although appellant testified that the trip occurred in October of that year, he nonetheless confirmed that he spent the weekend alone with Ms. Wilmot. Since he could not have been surprised, mislead, or otherwise rendered incapable of anticipating the prosecution's proof on this issue, *see Commonwealth v. Devlin, supra* 460 Pa. at

The victim did, however, provide several dates which, if believed, would have permitted the jury to ascribe a "reasonably certain" date to the offenses alleged. For example, it is undisputed that Ms. Wilmot gave birth to a child on April 5, 1976, (N.T. 72), allegedly her stepfather's offspring,[11] and that she had an abortion, arranged and financed by appellant, on May 14, 1977. (N.T. 85). Thus, as the court below noted in its opinion,

> "There being no evidence to show the baby was not a full term one, then it is reasonable to infer the fact of intercourse occurred some nine months prior or on or about August 5, 1975 . . . . On May 17, 1977, a three month old fetus was aborted inferring that sexual intercourse had taken place on or about February 14, 1977."

At 1373. In addition, Ms. Wilmot testified that she was sexually abused immediately prior to her six week checkup following the birth of her child, (N.T. 79–80), and that she was last abused sexually approximately one week prior to June 17, 1977 (N.T. 83–84). It cannot be gainsaid that it is for the trier of fact to weigh the testimony and resolve any inconsistencies therein. *See Commonwealth v. Bryant*, 247 Pa.Super. 460, 462, 372 A.2d 917, 918 (1977). Thus, in view of the above evidence, and despite appellant's testimony to the contrary, we conclude that there is ample evidence in the record to support the instant convictions.

Appellant also argues that the lower court erred when it admitted into evidence testimony regarding incidents of sexual abuse allegedly occurring beyond the statute of limitations. This contention is without merit.

 The general rule in Pennsylvania is that "evidence of criminal activity not charged in the indictment or informa-

514–15 n.1, 333 A.2d at 891 n.1; *Commonwealth v. Pope*, 455 Pa. 384, 391, 317 A.2d 887, 890 (1974), it would be patently absurd to suggest that his substantial rights had been infringed upon.

11. The victim testified that the baby was appellant's. Not surprisingly, appellant denied this allegation at trial. A court order was obtained on November 4, 1977, which order authorized the taking of blood samples from appellant and the baby. The test results were, however, excluded at the trial below.

444

tion on which the defendant is being tried cannot be intro-
duced at trial *except in certain limited circumstances* .... "
*Commonwealth v. Fuller*, 479 Pa. 353, 357, 388 A.2d 693, 694
(1978) (citations omitted) (emphasis added). In *Common-
wealth v. Bell*, 166 Pa. 405, 31 A. 123 (1895), our supreme
court ruled that a prosecution for incest was such an excep-
tion. The court there held that in such a case it is "compe-
tent for the Commonwealth to introduce evidence of illicit
relations between the parties *prior* to the specific offenses
laid in the indictment." *Id.*, 166 Pa. at 411, 31 A. at 123
(emphasis added).

 Appellant's reliance on *Commonwealth v. Bradley*,
243 Pa.Super. 208, 364 A.2d 944 (1976) is misplaced. *Bradley*
simply adheres to the long held view that evidence of similar
sexual crimes committed on or with persons other than the
victim of the crime then being prosecuted is inadmissible to
show a propensity for illicit conduct. *See, e. g., Common-
wealth v. Leppard*, 271 Pa.Super. 317, 319, 413 A.2d 424, 425
(1979) (Spaeth, J., concurring). Accordingly, in the instant
case, as in *Leppard*, we find *Commonwealth v. Bell, supra*,
controlling and

"'conclude . . . that it was proper for the Commonwealth
to introduce evidence of prior illicit relations between the
parties although such evidence disclosed other indictable
offenses of like nature which were barred by the statute
of limitations.' 166 Pa. at 412, 31 A. at 123, 124."
*Commonwealth v. Leppard*, 271 Pa.Super. 317, 319, 413 A.2d
424, 425 (1979).

Finally, appellant argues that the trial judge erred by
failing to permit cross–examination of Ms. Wilmot concern-
ing whether her stepfather had or had not been circumcised.
Again, we disagree.

 It is axiomatic that a trial judge has broad pow-
ers concerning the conduct of a trial and, particularly, with
regard to the admission or exclusion of evidence. *See Com-
monwealth v. Humphreys*, 267 Pa.Super. 318, 330, 406 A.2d
1060, 1056 (1979); *Commonwealth v. Kramer*, 247 Pa.Super.

1, 7–8, 371 A.2d 1008, 1011 (1977); *Glickman v. Prudential Insurance Co. of America,* 151 Pa.Super. 52, 29 A.2d 224 (1942). Controlling the scope of cross–examination is likewise within the sound discretion of the trial judge. *See Commonwealth v. Hart,* 479 Pa. 84, 387 A.2d 845 (1978); *Commonwealth v. Kivlin,* 267 Pa.Super. 270, 406 A.2d 799 (1979); *Commonwealth v. Smith,* 198 Pa.Super. 499, 503, 182 A.2d 104, 106 (1962). Accordingly, reversal by an appellate court is inappropriate unless the judge's ruling on such matters amounts to an abuse of discretion.[12]

Our reading of the record fails to reveal any such abuse of discretion. During cross–examination, appellant's counsel asked Ms. Wilmot the following question: "Do you know what a circumcision is?" (N.T. 135). The Commonwealth objected to this line of questioning as being irrelevant and, after a lengthy discussion, both at sidebar and in chambers, the trial judge sustained the objection. The record of this discussion simply reflects defense counsel's failure to convince the trial judge of the merits of his argument that the evidence was relevant [13] and does not

12. Our supreme court has defined an abuse of discretion thus:
"An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or illwill, as shown by the evidence or the record, discretion is abused."
*Man O'War Racing Ass'n, Inc. v. State Horse Racing Comm'n,* 433 Pa. 432, 451 n.10, 250 A.2d 172, 181 n.10 (1969), *quoting Mielcuszny v. Rosol,* 317 Pa. 91, 93–94, 176 A. 236, 237 (1934).

13. In *Commonwealth v. Allen,* 269 Pa.Super. 146, 409 A.2d 106 (1979), this court posited that in order to be relevant:
"[E]vidence . . . must in some fashion advance the inquiry and must tend to establish some fact material to the case and make the existence of that fact more or less *probable* as distinguished from *possible.*"
*Id.,* 269 Pa.Super. at 149, 409 A.2d at 108 (emphasis in original). Evidence that appellant was or was not circumcised does not, in our opinion, meet this test. At best, such evidence would establish that the victim was not very observant. However, it is patently unreasonable to argue that such evidence could be used to disprove the occurrence of the rape and thus to discredit the victim. This is particularly true where, as here, there was no evidence adduced to prove that the victim had observed appellant's organ at a time when

support a finding that the trial judge misapplied the law, acted out of ill—will, or in any other manner abused his discretion.[14]

■ Appellant's argument, that the victim's inability to state whether he had been circumcised would either make the occurrence of the rape less probable or diminish the victim's credibility, ignores several crucial facts. First, the record contains no evidence that the victim ever described or attempted to describe appellant's organ.[15] Moreover, it is

she could discern what she was seeing and thus distinguish a circumcised penis from one that was uncircumcised.

14. The following exchange between defense counsel and the court is illustrative of the entire discussion on the issue of relevance:

"THE COURT: Now, if you can show me the relevancy, Mr. Baginsky—you are on the defense and the Court is not going to prevent you from putting in any legitimate defense, but I want you to show me the relevancy whether he is circumcised or not circumcised. . . .

MR. BAGINSKY: The relevancy is, as I see it, your Honor, to have the victim's testimony. The victim has testified as to various sexual acts of penetration. She testified that those acts were placed over a long period of time.

THE COURT: I don't recall her describing his penis. . . .

MR. BAGINSKY: Under the circumstances . . . I believe she would have had the opportunity to see it.

THE COURT: I believe the child said she was in the third grade at [the time she was forced to engage in oral sex].

. . . What does a third grader know about a circumcised or a non—circumcised penis? . . . I'm still waiting for you to show me the relevancy. I will let you put it in. If there is no relevancy I will sustain the objection.

MR. BAGINSKY: My argument is that I feel it has probative value.

THE COURT: The Court is going to sustain the objection." (N.T. 139–41).

15. Evidence that appellant was uncircumcised would be relevant to prove mistaken identity if, for example, the victim had testified that her assailant had been circumcised. *See Ortega v. State*, 462 S.W.2d 296 (Tex.Cr.App.1970). *See also Commonwealth v. Allen, supra* (evidence that defendant was infected with gonorrhea admitted as circumstantial evidence of identity in murder case where gonococci bacteria were present in victim's vagina). These cases are inapposite to the instant proceeding, however, since appellant sought to use the evidence not for purposes of identification but rather to impeach, without foundation, the victim of a rape.

unclear whether Ms. Wilmot had even observed appellant at a time during which she was both sufficiently mature [16] and emotionally alert to discern a circumcised penis from one that was not. Finally, no evidence was introduced to establish as a matter of fact the skin structure of appellant's organ and, as Judge Harper intimated, short of an *in camera* inspection, the proof of such a fact could be problematic. Under these circumstances, we cannot agree that Judge Harper abused his discretion.

Accordingly, we affirm the judgment of sentence.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

I dissent. At trial the appellant unequivocally denied ever having sexual relations with Miss Wilmot. The victim's mother testified that she did not believe her husband had sexual relations with her daughter. Likewise, the victim's sister, Marjorie, age fourteen, claimed that she had no knowledge of any sexual activity between her stepfather and sister.

In support of his denial that sexual relations occurred between his stepdaughter and himself, the appellant attempted to introduce evidence concerning the victim's knowledge of his physical characteristics. Specifically, he attempted to question the victim as to whether she knew if appellant had been circumcised. Appellant claims he had not been circumcised. The Commonwealth objected to this line of questioning and the lower court sustained the objection, ruling it was irrelevant.

Evidence is relevant only if it tends to establish some fact material to the case or tends to make the fact at issue more or less probable. *Commonwealth v. Myers*, 439 Pa. 381, 266

---

**16.** There was some dispute as to the age at which the victim was forced to engage in oral sex with the appellant. It is clear that the victim was obliged to perform such acts when she was between 8 to 10 years of age and in the third grade. (N.T. 38–39). There is also some suggestion, however, that this activity may occasionally have occurred when the victim was approximately 15 years of age. (N.T. 82).

A.2d 756 (1970). The trial court has wide discretion in ruling on relevancy and materiality of evidence. *Commonwealth v. Kivlin*, 267 Pa.Super. 270, 406 A.2d 799 (1979). Nonetheless, in a criminal case the defendant is entitled to a fair, complete and impartial hearing before judgment is entered against him and this necessarily includes the opportunity of presenting every fact which is material and relevant to issues involved. *Commonwealth v. Phelan*, 427 Pa. 265, 234 A.2d 540 (1967) *cert. denied Phelan v. Pennsylvania*, 391 U.S. 920, 88 S.Ct. 1803, 20 L.Ed.2d 657 (1968). Thus the question before us is whether the victim's inability to correctly describe appellant's sexual organ as being circumcised or uncircumcised would make it more probable than not that the offenses alleged did not occur.

The Commonwealth contends that the inquiry is not relevant because it does not tend to affect the probability of the occurrence of some fact material to the crime charged or to the defense central to appellant's case. In its brief the Commonwealth states that the evidence sought to be admitted would be relevant only to the issue of whether the victim *viewed* appellant's penis and not whether a rape occurred. The Commonwealth argues that such evidence would merely tend to show how observant the victim was, given that whether or not a circumcision has been performed can be readily ascertained and that such an inquiry may be potentially relevant if probative of the defense theory of mistaken identity. Likewise, the trial judge stated in his opinion that "the matter of circumcision was irrelevant as it was of no probative value as to identity of the offender or to a determination if a sexual act had actually taken place."

However, the appellant argues that the testimony sought to be admitted goes directly to the credibility of the prosecution's primary witness. More than showing that the victim viewed appellant's penis, the appellant maintains that in light of the frequency of sexual encounters alleged as well as the victim's testimony that oral sex had taken place the evidence shows that the victim should be able to determine whether or not appellant was circumcised. Therefore, ap-

pellant contends, the victim's inability to acknowledge his lack of circumcision would discredit her prior testimony.

During the offer of proof counsel for the defendant stated:

> MR. BAGINSKI: Your Honor, I believe that it is a very relevant issue. We have testimony here that indicates that various sexual acts, sexual intercourse took place over a long period of time. Basically the relevancy is that she was able to see the reproductive organ of the defendant and basically this witness should be able to tell and be able to determine whether or not he was circumcised.
>
> THE COURT: What does that have to do with sex?
>
> MR. BAGINSKI: Well, your Honor, the sex and the charge against this defendant deals with sexual activities as related by the victim. It was basically the use of the reproductive organ. She has had the opportunity of observing it. She knows what circumcision is because she has a seventeen month old son who has been circumcised and_ _ _

I agree with the appellant that such evidence, as bearing on the victim's credibility, is relevant. The appellant sought to offer evidence of the victim's knowledge of the physical characteristics of his penis. He asserts that her ability to describe these characteristics would tend to prove whether the victim is credible. The credibility of the witness is certainly relevant. The victim's inability to state correctly that the appellant had not been circumcised, given the victim's opportunities to observe, would make the fact at issue (the occurrence of the rape) less probable. *Commonwealth v. Myers, supra.* The majority notes that there is no evidence on the record as to whether the victim ever described or attempted to describe appellant's organ and as to the actual skin structure of appellant's organ. However, such information would not be relevant in any way unless Miss Wilmot had answered the question "Do you know what a circumcision is?" in the affirmative. This question was objected to as irrelevant and the objection was sustained. The majority makes much of the lack of foundation, but

fails to recognize that the appellant was prevented from establishing the most fundamental fact–that Miss Wilmot was aware of the difference between circumcision and uncircumcision. Only then could defense counsel argue the relevancy of the line of questioning he wished to pursue.

Therefore, I would reverse the judgment of sentence and grant the appellant a new trial.