J-A05042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
DEVLIN JAKE JONES, JR. :
:
Appellant : No. 577 WDA 2018

Appeal from the Judgment of Sentence August 10, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005739-2016

BEFORE: GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED FEBRUARY 21, 2019**

Devlin Jake Jones, Jr. (Appellant) appeals from the judgment of

sentence imposed after the trial court convicted him of aggravated

assault/victim less than 6 years old (aggravated assault) and endangering the

welfare of children[1] (EWC). Appellant argues that the evidence was

insufficient to show that the crimes occurred within the time period alleged in

the criminal information. Upon review, we affirm.

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(8) ("[A] person 18 years of age or older" "is guilty
of aggravated assault if he . . . attempts to cause or intentionally, knowingly
or recklessly causes bodily injury to a child less than six years of age.");
4304(a)(1) ("A parent . . . supervising the welfare of a child under 18 years
of age . . . commits an offense if he knowingly endangers the welfare of the
child by violating a duty of care, protection or support.").

The Commonwealth alleged that Appellant and Linda Sherrell Jones (Mother) physically abused and endangered the welfare of their 5 children, all of whom were under the age of 7.[2] Pertinently, the Commonwealth's criminal information against Appellant stated that the offenses occurred between "April 1, 2015 through September 22, 2015." Criminal Information, 8/11/16, at 2.[3]

Appellant and Mother were tried jointly in a bench trial on May 26, 2017. Kaitlyn Leo, a caseworker with the Allegheny County Department of Children, Youth, and Families (CYS), testified that CYS began in-home services with Appellant's family in April of 2014, due to housing issues. N.T. Trial, 5/26/17, at 64. At that time, the home did not have electricity and "[t]here was little to no food in the home." *Id.* at 64-65. In April of 2015, CYS observed "unexplained" injuries on the children, and one of the children, D.T. (Sibling), who was approximately 4 years old, "disclosed physical abuse."[4] *Id.* at 66-

---

[2] Mother has two other children. *See In the Interest of D.S.*, 1377 WDA 2017 (unpublished memorandum) (Pa. Super. Dec. 21, 2018) (affirming termination of Mother's parental rights).

[3] We note that the electronic record certified on appeal does not include an official trial docket. While the face of the criminal information is stamped with a filing date of August 11, 2016, an "index" to the record states that the information was filed on August 17, 2016. The "index," however, is not certified by the clerk of courts, nor does it include any information as to if and when documents were properly served. Thus, we remind both the trial court and Appellant's counsel that the record shall include "a certified copy of the docket entries prepared by the clerk of the lower court." *See* Pa.R.A.P. 1921; *Commonwealth v. Landis*, 89 A.3d 694, 697 n.5 (Pa. Super. 2014) ("[I]t is the appellant's burden to ensure that the certified record is complete.").

[4] The trial transcript does not specify who observed the injuries in April of 2015, nor to whom Sibling disclosed the abuse. *See* N.T., 5/26/17, at 66.

68, 130. CYS then began "intensive in-home services," which included visits to the home 3 to 4 times per week. *Id.* at 68.

On September 21, 2015, Caseworker Leo observed injuries on another child, D.T. (Sibling-2), who was approximately 6 years old; the injuries were on Sibling-2's lower back and outer thighs. N.T., 5/26/17, at 77. The injuries were not consistent with the parents' explanations, and Caseworker Leo took Sibling-2 to the hospital, where he had both a physical examination and a forensic interview. *See* Trial Court Opinion, 7/9/18, at 2; N.T., 5/26/17, at 112. The following day, September 22, 2015, CYS obtained an emergency custody authorization from the juvenile court and removed all of the children from Appellant and Mother's home. N.T., 5/26/17, at 79-82. That same day, the children had pre-foster placement physical examinations at Children's Hospital of Pittsburgh, with Dr. Adelaide Eichman, a pediatrician and expert in child abuse and neglect. *Id.* at 88, 112. At this time, Caseworker Leo observed injuries on all 5 of the children. *Id.* at 88.

Two of the children, Sibling and D.T. (Child), who were not twins, but both around 3 years old during the relevant time period in 2015, testified at trial. At the time of trial, Sibling was 7 years old, Child was 6 years old, and they were living together in the same foster home. N.T., 5/26/17, at 18-19, 46. Child related that if the children got in trouble, Appellant and Mother "would whup us"; he also testified that Appellant hit him on his back with a hanger, leaving marks. *Id.* at 52-54. Child described an incident when he

and two of his siblings were in the bath alone and splashing water. ***Id.*** at 55. Appellant came into the bathroom, went out and got a hanger, returned, and "beat" the children. ***Id.*** at 55-56. Child stated that he "got hurt." ***Id.*** at 56. Sibling testified that when he "broke the rules," Appellant and Mother beat him with an electrical cord and a hanger on his "bum" and sometimes his legs, and that it hurt. ***Id.*** at 22.

The Commonwealth presented the videotaped testimony of Dr. Eichman. The trial court summarized:

> Dr. Eichman testified that she examined [Sibling] on September 21, 2015 and observed various injuries on [Sibling.] Dr. Eichman observed multiple linear marks on [Sibling's] back and loop marks on the child-victim's right outer thigh. Dr. Eichman opined that the injuries sustained by [Sibling] were "pattern marks" caused by an implement of some sort and that they would have caused substantial pain when they were inflicted. Dr. Eichman had reviewed records . . . relating to the examination of [Sibling] at the Children's Hospital of Pittsburgh in April of 2015. Dr. Eichman opined that [Sibling] was the victim of physical abuse.

Trial Court Opinion, 7/9/18, at 2-3.

Neither Appellant nor Mother testified. Mother did not present any evidence. Appellant presented a videotape of a July 27, 2015 forensic interview of Child. N.T. Trial, 5/26/17, at 138, 148.

At the conclusion of trial, the court found Appellant guilty of aggravated assault against Child and EWC.[5] On August 10, 2017, the court sentenced

---

[5] The trial court found Mother guilty of the same offenses, and on appeal, this Court affirmed her judgment of sentence. ***Commonwealth v. Jones***, 1359

- 4 -

J-A05042-19

Appellant to 6 to 12 months of incarceration, followed by 5 years of probation, on the aggravated assault count, with no further penalty for EWC. Appellant filed a timely post-sentence motion, which the trial court denied on March 26, 2018. Appellant filed this timely appeal. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.[6]

On appeal, Appellant states his issue as follows:

"In criminal trials the proof offered by the Commonwealth must measure up to the charge made in the indictment." Here, the Information specifically alleged that the crime occurred between April 1, 2015 and September 22, 2015. At trial, however, the Commonwealth failed to prove that the alleged crime occurred during this timeframe. Thus, the "proof" failed to "measure up to the charge made in the indictment." Did the court err in convicting [Appellant]?

Appellant's Brief at 4.

Appellant contends that because the Commonwealth alleged in the

---

WDA 2017 (unpublished memorandum) (Pa. Super. Nov. 20, 2018). Additionally, Mother's parental rights to the 5 children in this case, as well as her 2 other children, were terminated. *In The Interest of D.S.*, 1377 WDA 2017 at 4 n.1 (unpublished memorandum) (Pa. Super. Dec. 21, 2018) (affirming termination of parental rights). Finally, we note that according to Appellant, his parental rights have also been terminated. Appellant's Brief at 9.

[6] Appellant timely requested, and was granted, additional time to file both a post-sentence motion and the court-ordered Rule 1925(b) statement. We note that Appellant's Rule 1925(b) statement spans 4 pages and includes extensive argument; we remind counsel that a Rule 1925(b) "[s]tatement shall set forth only those rulings or errors that the appellant intends to challenge," "shall concisely identify each ruling or error," and "should not be redundant or provide lengthy explanations as to any error." *See* Pa.R.A.P. 1925(b)(4)(i)-(ii), (iv).

criminal information that his criminal conduct occurred between April 1, 2015 and September 22, 2015, the Commonwealth was required to establish that the offenses were in fact committed during that period. Appellant asserts that the Commonwealth failed to do so. In support, he reasons that "[a]bsolutely no competent testimony offered at trial put the offense dates within this timeframe. The child witnesses did not identify the dates they were disciplined." Appellant's Brief at 19. Appellant also points out that the CYS caseworker, Ms. Leo, testified that the child-victim "initially disclosed" that he was abused in April of 2015 — months before she began working with the family in July of 2015 — without any explanation of how, when, where, or to whom the disclosure was made. *Id.* at 10, *citing* N.T. Trial, 5/26/17, at 66, 68. Appellant additionally references Dr. Eichman's video testimony that she could not say when the child-victim's injuries occurred, or who caused them. *Id.* at 10-11.

We first note that in his trial court pleadings, Appellant inaccurately cited the criminal-information dates as March 1, 2015 through April 30, 2015.[7] **See Jones**, 1359 WDA 2017; Appellant's Concise Statement of the Errors Complained of on Appeal, 6/5/18, at ¶¶ 15, 17; Appellant's Amended Post-Sentence Motion, 11/27/17, at ¶¶ 16, 18. The trial court likewise stated that

---

[7] There were apparently two criminal cases filed against Mother; one with these alleged offense dates (March 1 through April 30, 2015) and the second case with the same alleged offense dates as Appellant (April 1, 2015 through September 22, 2015). **See** N.T., 5/26/17, at 157-158.

the criminal information dates were March 1, 2015 through April 30, 2015. Trial Court Opinion, 7/9/18, at 4. Further, the aggravated assault count of which Appellant was convicted, Count 1, named "John Doe #3" as the victim and pertained to Child. *See* N.T. Trial, 5/26/17, at 160. However, in discussing this count, the trial court considered the trial testimony of Sibling. *See* Trial Court Opinion, 7/9/18, at 1-2 (discussing testimony of 7-year old child). However, these discrepancies do not affect our disposition.

Pennsylvania Rule of Criminal Procedure 560(B) states that a criminal information "shall be valid and sufficient in law if it contains":

> the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient[.]

Pa.R.Crim.P. 560(B)(3). This Court has stated:

> It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty. . . ." The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense.
>
> However, "[d]u[e] process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a specific date of an alleged crime. Additionally, "indictments must be read in a common sense manner and are not to be construed in an overly technical sense." Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused. *See* Pa.R.Crim.P. 560(B)(3), stating that it shall be sufficient for the Commonwealth to provide in the information, if

> the precise date of an offense is not known, an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations.
>
> Case law has further "established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct."

*Commonwealth v. Brooks*, 7 A.3d 852, 857–858 (Pa. Super. 2010) (citations omitted).

"[T]he 'Commonwealth may not be required to prove the single specific date of a crime in every instance[;]' instead, 'any leeway permissible would vary with the nature of the crime and the age and condition of the victim balanced against the rights of the accused.'" *Id.* at 858, *citing Commonwealth v. McClucas*, 516 A.2d 68, 70-71 (Pa. Super. 1986). In *Commonwealth v. Niemetz*, 422 A.2d 1369 (Pa. Super. 1980), the Commonwealth alleged that the defendant repeatedly committed sexual offenses against his step-daughter from the time the step-daughter was 9 years old until she was 16. *Id.* at 1371. The criminal information averred that the alleged offenses occurred "on (or about) divers[e] dates beginning in 1972 and continuing until August, 1977." *Id.* at 1372. The Commonwealth acknowledged that it unable to provide more specificity in the dates. On appeal, this Court held that the information "appear[ed] to fit precisely [Rule 560(B)(3)'s predecessor rule's] proviso that an allegation that an offense was committed 'on or about **any** date within the period fixed by the statute of limitations shall be sufficient' when (1) time is not of the essence and (2) a

precise date is unknown." *Id.* at 1373 (emphasis added). Further, we noted that the defendant had not questioned the validity of the information, but rather the lack of specificity in the dates, and that "time [was] not of the essence in the crimes for which [he] was charged and convicted." *Id.*

Preliminarily, we note that in this case, Appellant did not object to Child or Sibling's competency to testify, and thus his argument that there was "no competent testimony" is waived. **Commonwealth v. Molina**, 33 A.3d 51, 55 (Pa. Super. 2011) (*en banc*) ("[I]t is 'well-settled that a defendant's failure to object to allegedly improper testimony at the appropriate stage in the questioning of the witness constitutes waiver.'"); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *see also Commonwealth v. Anderson*, 552 A.2d 1064 (Pa. Super. 1988) ("Because a trial judge has a superior opportunity to assess the competency of a witness, an appellate court should virtually never reverse a competency ruling.").

Moreover, even in the absence of waiver, the trial court properly opined that Caseworker Leo's credible testimony that she observed injuries on the children, in conjunction with Dr. Eichman's testimony, was sufficient to prove that the abuse occurred within the time period set forth in the criminal information. Trial Court Opinion, 7/9/18, at 4. This conclusion is supported by both the record and the law. **See Brooks**, 7 A.3d at 857 ("[T]he [finder] of fact while passing upon the credibility of witnesses and the weight of the

evidence produced, is free to believe all, part or none of the evidence."). For example, Caseworker Leo testified that she observed injuries on Child on September 22, 2015 — the last day of the time period set forth in the criminal information — and that the injuries were not consistent with Appellant's explanation. N.T., 5/26/17, at 100. Further, while Appellant challenges Caseworker Leo's testimony about Sibling's initial disclosure that he was abused, Appellant ignores that in overruling his hearsay objection regarding the initial disclosure, the trial court explained that it would consider Ms. Leo's testimony only as an explanation as to why CYS changed Appellant's service plan, and not for the truth of the matter asserted. Appellant also disregards Caseworker Leo's repeated testimony that subsequent to the initial disclosure, she personally observed injuries on the children.

Finally, Appellant does not otherwise contest the validity of the criminal information, and he does not argue that "timing was of the essence," that he was denied sufficient notice or due process, or that he was unable to adequately prepare a defense. **See Niemetz**, 422 A.2d at 1373. Appellant also disregards the legal authority which provides the Commonwealth with leeway in proving the date of an offense subject to the "nature of the crime" and the "age and condition of the victim" when there is a "continuous course of criminal conduct." **See Brooks**, 7 A.3d at 857-858.

For all of these reasons, we find no merit to Appellant's argument. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2019