J-A09040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ADAM ZYDNEY | : | |
| | : | |
| Appellee | : | No. 927 MDA 2016 |

Appeal from the Order Entered May 4, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s):  CP-14-CR-0001371-2015,
CP-14-CR-0001810-2015

BEFORE:   GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 27, 2017**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Centre County Court of Common Pleas, which suppressed the statements which Appellee, Adam Zydney, made to police during a non-custodial interview.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. On July 31, 2015, police executed a search warrant at Appellee's residence

---

[1] The record indicates the court issued notice of its May 4, 2016 order to the parties on May 5, 2016.  The Commonwealth had until June 5, 2016, to file a notice of appeal.  June 5, 2016, however, fell on a Sunday.  Accordingly, the Commonwealth timely filed its notice of appeal on Monday, June 6, 2016. *See* Pa.R.A.P. 108(a)(1) (explaining that in computing any period of time under these rules involving date of entry of order, day of entry shall be day clerk of court **mails or delivers** copies of order to parties).

for indicia of possession and distribution of child pornography. During the search, police confiscated, *inter alia*, Appellee's laptop. On August 4, 2015, Appellee and his attorney voluntarily met with Detective Martin, who interviewed Appellee. Detective Martin informed Appellee the interview was non-custodial and Appellee was free to leave at any time. Detective Martin explained that he assumed Appellee understood his rights because counsel was present; Appellee indicated he did. Detective Martin advised Appellee that if Appellee cooperated and explained what authorities would discover on Appellee's laptop, Detective Martin would charge Appellee with only one count of possession of child pornography. Detective Martin also said he could not "ultimately determine what would happen with the final disposition of the case." (N.T. Suppression Hearing, 1/22/16, at 30). Subsequently, Appellee told Detective Martin there was child pornography on his laptop.

The Commonwealth charged Appellee on August 31, 2015, with one count of possession of child pornography at No. 1371-2015. The Commonwealth charged Appellee, on November 11, 2015, with an additional 1,061 counts of possession of child pornography at No. 1810-2015. The court consolidated the cases on December 16, 2015. On December 23, 2015, Appellee filed a motion to suppress his interview statements to Detective Martin and to dismiss the additional 1,061 possession charges. The court held a suppression hearing on January 22, 2016, where Detective Martin testified. On May 4, 2016, the court granted in part and denied in

part Appellee's suppression motion. The court suppressed Appellee's August 4th interview statements as involuntary but did not dismiss the additional 1,061 charges. The Commonwealth filed a timely notice of appeal on Monday, June 6, 2016, and certified in its notice of appeal that the court's suppression order substantially handicapped or terminated prosecution. On that same day, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); the Commonwealth timely complied on June 27, 2016.

The Commonwealth raises one issue for our review:

> WHETHER THE TRIAL COURT ERRED IN GRANTING
> [APPELLEE'S] MOTION TO SUPPRESS STATEMENTS
> FINDING THAT THE STATEMENTS WERE NOT MADE
> VOLUNTARILY WHEN THEY WERE MADE BY [APPELLEE],
> DURING A VOLUNTARY VISIT TO THE POLICE STATION,
> WHEN HE WAS ACCOMPANIED BY HIS ATTORNEY
> THROUGHOUT HIS INTERVIEW, AND NO PROMISE OF
> ACTUAL IMMUNITY WAS MADE TO [APPELLEE?]

(Commonwealth's Brief at 4).

When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are:

> [We] consider only the evidence from the defendant's
> witnesses together with the evidence of the prosecution
> that, when read in the context of the entire record,
> remains uncontradicted. As long as there is some
> evidence to support them, we are bound by the
> suppression court's findings of fact. Most importantly, we
> are not at liberty to reject a finding of fact which is based
> on credibility.
>
> The suppression court's conclusions of law, however, are
> not binding on an appellate court, whose duty is to

- 3 -

> determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (citations and quotations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Thomas King Kistler, we conclude the Commonwealth's issue merits no relief. The trial court's opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed May 4, 2016, at 9-10) (finding: Appellee made inculpatory statements in interview with Detective Martin; Appellee was free to leave interview and had counsel present throughout interview; during suppression hearing, Detective Martin testified that he told Appellee during interview that if Appellee "was cooperative…and [if] he's honest with me and I find what he's telling me I'm going to find, then I would charge him with one count, but I couldn't ultimately determine what would happen with the final disposition of the case"; notwithstanding Detective's statement that Appellee was free to leave interview at any time, Detective was person in apparent authority to make and perform on his promise to file only one charge; Detective Martin was unable to bind District Attorney's office with promises as to charging decisions; likewise, Commonwealth cannot then use evidence obtained as direct result of those promises against Appellee; under totality of circumstances, Appellee's

interview statements to Detective Martin were involuntary and must be suppressed to put Appellee back in position as if he had not spoken with Detective Martin). The record supports the trial court's reasoning. Accordingly, we affirm on the basis of the trial court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2017

**IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA**
**CRIMINAL ACTION - LAW**

COMMONWEALTH OF PENNSYLVANIA          :
                                      :
      v.                                  :          No. CP-14-CR-1371-2015
                                      :          ~~No. CP-14-CR-1810-2015~~
ADAM ZYDNEY                           :

*Attorney for the Commonwealth:*          *Megan McGoron, Esq.*
*Attorney for the Defendant:*             *Roy Lisko, Esq.*

## OPINION AND ORDER

**Kistler, J.**

Presently before the Court are Defendant's Omnibus Pre-Trial Motions filed on November 6, 2015 and December 23, 2015.[1] A hearing on the Motion was held on January 22, 2016. Defendant submitted a Brief in Support of his Motion on March 6, 2016, and the Commonwealth submitted a Brief in Opposition on March 24, 2016. For the following reasons, Defendant's Motion is DENIED.

## FINDINGS OF FACT

1. On July 22, 2015, Officer Michael Mendez, of the West York Borough Police Department, specifically the Internet Crimes Against Children Unit, was conducting an undercover investigation into the internet sharing of child pornography. Officer Mendez was searching for hash values known to him to contain child pornography. Officer Mendez located a computer with the IP address of 207.174.204.29, which he determined was sharing files containing child pornography using a Bit Torrent filed-sharing network.

2. Officer Mendez was able to download two videos from the above IP address, the first depicting a white prepubescent female with blonde hair and blue eyes, posing and

---

[1] The November 6, 2015 Motion was filed at docket number CP-14-CR-1371-2015, and the December 23, 2015 Motion was filed at docket number CP-14-CR-1810-2015. Both Motions raise the same issues.

☒O ☐RD ☐S

(16)

exposing her breasts and vaginal area.[2]

3. Based on the video, Officer Mendez prepared an affidavit in support of a search warrant for the IP address. In doing so, Officer Mendez used a public service called "Aries" to determine the subscriber or company that has the wireless or internet server for that particular IP address. His search revealed the IP address belonged to getwireless.net.

4. The search warrant was approved by the Honorable Keith Albright of York County on July 23, 2015. Officer Mendez had the search warrant served on getwireless.net. The subscriber information came back to Alexa Kottmeyer at the address of 801 A-11 West Aaron Drive in State College, Centre County, Pennsylvania. Officer Mendez was pointed to the Ferguson Township Police Department by the dispatch center, as the subscriber's address fell within that jurisdiction.

5. The investigation was then assigned to Detective Martin of the Ferguson Township Police Department. Detective Martin first contacted Officer Mendez and received information about the case including the local home address of the IP address and the subscriber information. Detective Martin confirmed the name Alexa Kottmeyer was associated with that specific address.

6. Detective Martin then prepared a search warrant for the residence based on the information provided to him by Officer Mendez. The search warrant was approved by District Judge Dutchcot and was executed on the residence on July 31, 2015. Detective Martin was looking for any electronics that had the capability of connecting to the internet or any electronic devices that are capable of storing images or videos.

7. Defendant was present at the residence when the search was conducted. Electronic items

---

[2] Counsel for Defendant and the Commonwealth stipulated at the hearing to the contents of the video as Officer Mendez described to contain known child pornography.

were found, specifically a laptop computer later determined to belong to Defendant. This computer was forensically analyzed and child pornography, including the original videos viewed by Officer Mendez, were found on the laptop.

8. While the search warrant was being executed, Detective Martin asked Defendant if he would like to speak with him. Defendant indicated he would like to speak to an attorney first. Detective Martin was contacted two days later by Attorney Lance Marshall to set up a meeting. Attorney Marshall and Defendant voluntarily met with Detective Martin at the Ferguson Township Police Department on August 4, 2015.

9. Before the interview began, Detective Martin told Defendant that he was free to leave because this was not a custodial interrogation. Detective Martin also reminded Defendant that he did not have to speak to him. Detective Martin confirmed Defendant understood his rights.

10. When questioned about what was contained on the laptop, Defendant admitted that child pornography would be discovered. During the forensic analysis, hundreds of images of child pornography were discovered.

11. During the interview, Detective Martin told Defendant that if he cooperated and told him what he was going to find, and that was in fact what he did find, that he would charge him with only one count. However, Detective Martin did tell Defendant he could not ultimately determine what would happen with the final disposition of the case.

12. Originally, Detective Martin did file only one charge of possession of child pornography. However, at a later date he was instructed by the District Attorney's Office to file additional charges.

## DISCUSSION

"The Commonwealth shall have the burden of going forward with the evidence and of

3

establishing that the challenged evidence was not obtained in violation of the defendant's rights. The defendant may testify at such hearing, and if the defendant does testify, the defendant does not thereby waive the right to remain silent during trial." Pa.R.Crim.P. 581(h). In all cases, the burden of production is now upon the Commonwealth. *See Commonwealth ex rel. Butler v. Rundle*, 239 A.2d 426 (1968). The burden of persuasion is there as well. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966). *See also, Commonwealth ex rel. Butler v. Rundle, supra.*, which establishes a preponderance of the evidence as the standard of proof.

## I. Motion to Quash/Suppress – Alleged Insufficiencies of Search Warrant

Defendant alleges that Officer Mendez did not have the requisite probable cause within the four corners of the search warrant to effectuate a search. In particular, Defendant argues the search warrant application was insufficient because (1) the application does not provide a clear link between the IP address isolated by Officer Mendez and Defendant's apartment; and (2) even if the Court were to find that the application supplied the issuing authority with every necessary link from the IP address to the apartment address, the information relied upon to draw these links was stale at the time of application.

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens of the Commonwealth from unreasonable searches and seizures pursuant to general warrants. *Commonwealth v. Walston*, 724 A.2d 289, 291 (Pa. 1998). In *Commonwealth v. Edmunds*, the Pennsylvania Supreme Court explained the twin aims of Article 1, Section 8 as "the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." *Commonwealth v. Edmunds*, 586, A2d 887, 897 (Pa. 1991). "Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search." *Commonwealth v. Baker*, 615 A.2d 23, 24 (Pa. 1992).

4

Upon review, the duty of the court is to ensure the magistrate had a "substantial basis for ... concluding probable cause existed." *Id.*

"The standard for evaluating whether probable cause exists for the issuance of a search warrant is the "totality of circumstances" test as set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted by [the Pennsylvania Supreme] Court in *Commonwealth v. Gray,* 509 Pa. 476, 484, 503 A.2d 921, 925 (1985)." *Commonwealth v. Jones,* 668 A.2d 114, 116 (Pa. 1995). "A magistrate is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 116-17 (citations omitted).

Officer Mendez's affidavit of probable cause contained his training and experience in child exploitation and child pornography investigations, as well as all of the information about the specific incident that led him to believe that evidence of child pornography would be located at the address he sought to obtain from getwireless.net. Specifically, Officer Mendez detailed his discovery of a computer sharing known child pornography, his successful download of a video file, a description of that video, and his use of Aires to discover the IP address in question belonged to getwireless.net. Based on this information, Officer Mendez sought a search warrant for getwireless.net to obtain the subscriber information connected to that IP address. Based on these facts, the Court finds that the factual averments set forth in Officer Mendez's affidavit of probable cause clearly provide a sufficient basis for issuing the search warrant.

After obtaining the subscriber information from getwireless.net, Officer Mendez transferred the case to Detective Martin and the Ferguson Township Police Department. Detective Martin then obtained a search warrant using the same information Officer Mendez had

5

used to obtain the first search warrant. Detective Martin accidentally made a typographical error by listing Armstrong Cable Services as the service provider in his affidavit. However, just one line below, he correctly lists that a search warrant was served on getwireless.net and the subscriber information obtained was for Alexa Kottmeyer at 801 W. Aaron Drive, Apartment A11. Moreover, the Detective lists getwireless.net in a following paragraph detailing his discussion with Park Forest Apartments Management that they do provide internet through that company. The question now becomes whether this misstatement was material to the determination of probable cause by the issuing magistrate.

"[S]earches conducted pursuant to warrants are to be favored over warrantless searches and thus ... must be tested with a commonsense, nontechnical, ungrudging, and positive attitude." *Commonwealth v. Conner*, 305 A.2d 341, 345 (Pa. 1973). "The test of materiality is not whether the misstatement strengthens the application, but rather whether the misstatement is essential thereto. This test is performed by deleting the misstatement and then determining whether sufficient probable cause remains in the application to issue a valid warrant." *Commonwealth v. Jones*, 323 A.2d 879, 881 (Pa. Super. Ct. 1974) (internal citations omitted). Thus, this Court must review the sufficiency of Detective Martin's affidavit of probable cause as if the mention of Armstrong Cable was not present. Without this statement, the affidavit still clearly states from what source the subscriber information was obtained, and that this information was obtained with a search warrant. Detective Martin's affidavit makes clear that getwireless.net was the provider from which the address to be searched was obtained. Furthermore, there is an overwhelming amount of information contained within the four corners of the affidavit for the issuing magistrate to be satisfied that evidence of child pornography would be located at that residence. Accordingly, the Court finds that the misstatement was not material, and there was still enough information in the affidavit for the magistrate to find

6

probable cause to issue the warrant.

Defendant's last argument with respect to the search warrants is that the information upon which the officers relied in obtaining the search warrants was stale. Defendant argues that because the Commonwealth failed to present any evidence to rebut this claim prior to or during the hearing on the instant motion, it has failed to meet its burden to prove admissibility of the evidence. In his Motion, Defendant argues the association of Alexa Kottmeyer with 801 W. Aaron Drive was last made in October of 2014, and thus stale information insufficient to support a finding of probable cause. Defendant fails, however, to cite any law or conduct any analysis as to why this is of significant importance. The current subscriber information obtained from getwireless.net was that of Ms. Kottmeyer, and Detective Martin's checked the local database just to see if that name was associated anywhere within his jurisdiction. This determination had no bearing on the fact that child pornography was shared from an IP address associated with that location. Moreover, the Commonwealth presented ample evidence that the information used to obtain both search warrants was not stale because all events of the investigation transpired over one week's time. As such, the Court finds no basis to conclude the information was stale, and Defendant's argument is without merit. Based on the foregoing, Defendant's Motion to Quash Search Warrant and Suppress Evidence is DENIED.

## II. Motion to Suppress – Statements to Police

Defendant argues his confession to Detective Martin was not voluntary because it was given in reliance upon Detective Martin's promise to file only one charge in this matter. In determining the voluntariness of a confession, the Court must look to the totality of the circumstances surrounding that confession. *Commonwealth v. Nester*, 709 A.2d 879, 882 (Pa. 1998). "The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it

7

deprived the defendant of his ability to make a free and unconstrained decision to confess." *Id.* In making this determination, a court should look at the duration and means of the interrogation, the physical and psychological state of the accused, the conditions attendant to the detention, the attitude of the interrogator, and any other factors that bear on a person's ability to withstand suggestion and coercion. *Id.* It remains the Commonwealth's burden to prove voluntariness by a preponderance of the evidence. *Id.*

"It is well established that district attorneys, in their investigative and prosecutorial roles, have broad discretion over whether charges should be brought in any given case." *Commonwealth v. Stipetich*, 652 A.2d 1294, 1295 (Pa. 1995). "While the police exercise, as a practical matter, a certain discretion in deciding whether to make an arrest, issue a citation, or seek a warrant, the ultimate discretion to file criminal charges lies in the district attorney. Police officers have no authority to enter agreements limiting the power of the district attorney in this regard." *Id.* However, "a confession induced by a promise of immunity from a person in apparent authority to perform the promise is involuntary." *Commonwealth v. Elslager*, 502 A.2d 1354, 1359 (Pa. Super. Ct. 1986) (*quoting Commonwealth v. Peters*, 373 A.2d 1055, 1062 (Pa. 1977)). Where an involuntary confession is obtained, the proper response is to suppress the inculpatory evidence procured through an inaccurate representation that there would be no prosecution or only certain charges would be filed. *Stipetich*, 652 A.2d at 1296.

In *Commonwealth v. Stipetich*, the Pittsburgh Police reached an agreement with the defendant's attorney that if the defendant would answer questions about the source of the drugs in his residence, no charges would be filed. *Id.* at 1294. Despite the defendant fulfilling his part of the agreement, Allegheny County authorities filed charges. Counsel for defendant filed a motion to dismiss, citing the non-prosecution agreement entered into with the Pittsburgh police. The Court of Common Pleas of Allegheny County granted the motion, and the Superior Court

8

affirmed. On appeal, the Supreme Court reversed the Superior Court's order, finding the non-prosecution agreement to be invalid because the Pittsburgh Police have no authority to bind the Allegheny County District Attorney's office as to whether charges would be filed. *Id.* at 1295. The Supreme Court reasoned that the decisions of the lower courts were based on the concern that allowing the charges to be brought after the defendant performed his part of the agreement would be fundamentally unfair because he may have disclosed information that could be used against him. In reversing the lower court's decision, the Supreme Court held the proper response to be one of suppression, not of dismissal. Thus, the Court reasoned, the defendant would be in the same position as if the unauthorized promise had never been made. *Id.* at 1296.

In the instant case, Defendant made inculpatory statements during an interview during which he was free to leave and was represented by counsel. During the suppression hearing, Detective Martin testified that he explained to Defendant during their meeting that if he "was cooperative and I understand what he's doing.... that helps me gauge on the charging decision. If that's the case and he's honest with me and I find what he's telling me I'm going to find, then I would charge him with one count, but I couldn't ultimately determine what would happen with the final disposition of the case." (*N.T.* pg. 30). While Defendant was told he was free to leave at any time and did not need to speak with Detective Martin, the Court finds that the Detective was a person in apparent authority to perform on his promise to only file one charge. Although Detective Martin cannot bind the Centre County District Attorney's Office with promises as to charging decisions, the prosecution cannot then use evidence obtained as a direct result of those promises against Defendant. Therefore, given the totality of the circumstances, the Court finds that Defendant's statements were not voluntary and must be suppressed. By ordering suppression of this evidence, the Court has put Defendant back in same position as he would have been had he not spoken to Detective Martin. Accordingly, Defendant's Motion to Suppress Statements is

9

GRANTED.

### III. Motion to Dismiss

Based on the above rulings, Defendant's Motion to Dismiss is hereby DENIED.

### **ORDER**

AND NOW, this 4th day of May, 2016, the Defendant's Omnibus Pre-Trial Motion is hereby ruled upon as follows:

1. Defendant's Motion to Quash Search Warrant and Suppress Evidence is hereby **DENIED.**

2. Defendant's Motion to Suppress Statements to Police is hereby **GRANTED.**

3. Defendant's Motion to Dismiss is hereby **DENIED.**

BY THE COURT:

Thomas King Kistler, Judge

10