652 A.2d 1294

COMMONWEALTH of Pennsylvania, Appellant,

v.

George STIPETICH, Appellee (No. 57).

COMMONWEALTH of Pennsylvania, Appellant,

v.

Heidi STIPETICH, Appellee (No. 58).

Supreme Court of Pennsylvania.

Argued Sept. 22, 1994.

Decided Jan. 23, 1995.

Robert E. Colville, Dist. Atty., Edward Marcus Clark, Maria V. Copetas, and Michael W. Streily, Asst. Dist. Attys., for appellant.

William F. Manifesto, Manifesto & Donahoe and Ellen M. Viakley, Pittsburgh, for appellee.

Before NIX, C.J., and FLAHERTY, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

*OPINION OF THE COURT*

FLAHERTY, Justice.

This is an appeal by allowance from an order of the Superior Court which affirmed the orders of the Court of Common Pleas of Allegheny County dismissing criminal complaints charging the appellees, George and Heidi Stipetich, with possession of controlled substances. At issue is the validity of a non-prosecution agreement entered by the Stipetiches and police officers of the City of Pittsburgh.

In November of 1990, the Pittsburgh police obtained a warrant and conducted a search of the Stipetiches' residence. The search yielded small quantities of controlled substances and drug paraphernalia.

Sergeant Thomas, the officer in charge of the search, was subsequently contacted by the Stipetiches' attorney, Charles Scarlata. Thomas and Scarlata reached an agreement that, if George Stipetich would answer questions concerning the source of the controlled substances and drug paraphernalia found in his residence, no charges would be filed against either of the Stipetiches. George Stipetich then fulfilled his part of the agreement by answering all questions posed by the police.

Nevertheless, in September of 1991, on the basis of the contraband recovered in the foregoing search, Allegheny County authorities charged the Stipetiches with possession of controlled substances. Citing the non-prosecution agreement

entered with the Pittsburgh police, the Stipetiches filed a motion seeking dismissal of the charges. The motion was granted by the court of common pleas. The Superior Court affirmed. We reverse.

The non-prosecution agreement was, in short, invalid. The Pittsburgh police did not have authority to bind the Allegheny County District Attorney's office as to whether charges would be filed.

It is well established that district attorneys, in their investigative and prosecutorial roles, have broad discretion over whether charges should be brought in any given case. "A District Attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case." *Commonwealth v. DiPasquale*, 431 Pa. 536, 540–41, 246 A.2d 430, 432 (1968) (emphasis omitted). Accord *Commonwealth v. Whitaker*, 467 Pa. 436, 443, 359 A.2d 174, 177 (1976); *Commonwealth v. Eisemann*, 276 Pa.Super. 543, 545–46, 419 A.2d 591, 592 (1980) (broad discretionary power to determine whether prosecutions shall be commenced or maintained); 42 Pa.C.S. § 5947(b) (discretion to request immunity for witnesses); Pa.R.Crim.P. 101A (power to require that criminal complaints issued by police officers be approved by district attorney prior to filing); Pa.R.Crim.P. 133 (power to approve or disapprove private criminal complaints); Pa.R.Crim.P. 313 (power to move for nolle prosequi). See also ABA, Standards for Criminal Justice 3–1.1, Commentary (2d ed. 1980) ("The prosecutor ... has responsibility for deciding whether to bring charges and, if so, what charges to bring against the accused....").

The district attorney's power to prosecute cannot be restricted by the actions of municipal police officers who might, in any given case, deem it worthless or ill-advised to prosecute. While the police exercise, as a practical matter, a certain discretion in deciding whether to make an arrest, issue a citation, or seek a warrant, the ultimate discretion to file criminal charges lies in the district attorney. Police officers

have no authority to enter agreements limiting the power of the district attorney in this regard.

The elected office of district attorney was created by our constitution, Pa. Const. art. IX, § 4, and its responsibilities are provided by statute. See 16 Pa.C.S. § 4402(a) (district attorney's duty to sign all bills of indictment and conduct in court all criminal prosecutions). The legislature could not have intended that duties of the district attorney would be stripped away by actions of any of the thousands of municipal police officers in the Commonwealth. Affording police officers authority to enter agreements that prevent the district attorney from carrying out his duties would present a clear infringement of powers which the constitution and the legislature, as well as our case law, have reposed in the district attorney. Not only would it shift power from an elected and publicly accountable official to appointed public servants, but it would create havoc in the administration of justice by creating unbridled and decentralized decisions about which cases will be prosecuted. It would also open the door to extensive litigation and confusion over the existence and meaning of all manner of alleged non-prosecution agreements.

We are not unmindful that, in certain cases, police can obtain useful information from a suspect in return for a promise not to prosecute. In such cases, police are certainly free to obtain the district attorney's consent to a non-prosecution agreement, so that the agreement will not be an unauthorized one. See generally *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (validity of agreements between prosecutor and defendant).

The decisions below, barring prosecution of the Stipetiches, embodied concern that allowing charges to be brought after George Stipetich had performed his part of the agreement by answering questions about sources of the contraband discovered in his residence would be fundamentally unfair because in answering the questions he may have disclosed information that could be used against him. The proper response to this concern is not to bar prosecution; rather, it is to suppress, at

the appropriate juncture, any detrimental evidence procured through the inaccurate representation that he would not be prosecuted. See *Commonwealth v. Peters,* 473 Pa. 72, 86–87, 373 A.2d 1055, 1062–63 (1977). This places the Stipetiches in the same position as if the unauthorized promise not to prosecute had never been made by the police. See *People v. Gallego,* 430 Mich. 443, 424 N.W.2d 470 (1988) (where police entered an unauthorized agreement not to prosecute, appropriate remedy was suppression of evidence obtained thereby, not dismissal of the criminal charges).

Accordingly, the order of the Superior Court affirming the dismissal of charges against the Stipetiches must be reversed.

Order reversed, and cases remanded to the court of common pleas for further proceedings.

ZAPPALA, J., did not participate in the consideration or decision of these cases.

PAPADAKOS, J., concurs in the result.

CAPPY, J., files a dissenting opinion.

MONTEMURO, J., is sitting by designation.

CAPPY, Justice, dissenting.

I am compelled to dissent for two reasons. First, the focus of the majority opinion is misplaced; the real issue before this Court is whether the trial court abused its discretion in granting the motion to dismiss. And second, I cannot agree with the conclusion of the majority, that the effect of the trial court's decision would create havoc in the criminal justice system by allowing police officers to usurp the power of the district attorney to prosecute criminal actions.

At issue in this case is the decision of the trial court to dismiss a criminal complaint against these two defendants. The criminal complaint was brought ten months after a search of the defendants home yielded small amounts of various controlled substances. The investigating officers had agreed not to charge the defendants for narcotics violations if they

cooperated fully with the police. This "agreement not to prosecute" is declared invalid by the majority as it was not entered into with the approval of the district attorney.

I cannot agree that the "validity" of the agreement is the controlling issue in this case. Rather, I believe the rights of the defendants to due process, that concept by which we guarantee an accused fundamental fairness and substantial justice, should be the proper focus of this Court's attention. *Commonwealth v. Bryant*, 367 Pa. 135, 79 A.2d 193 (1951), *cert. denied* 341 U.S. 954, 71 S.Ct. 1007, 95 L.Ed. 1376 (1951).

None of the parties contest the fact that an agreement was entered into, and that the defendants completely fulfilled their obligations under that agreement. Therefore, the "validity" of the agreement is not important. Of course, I concede that police officers do not have any authority to bind a district attorney by entering into non-prosecution agreements. Such a result would be absurd. However, when an agreement is negotiated due process requires that the defendants, who fulfilled their obligations under that agreement be treated with fairness and justice. Having a court decide how to best protect the rights of the accused, as was done here, does not, by any stretch of the imagination, mean that non-prosecution agreements entered into by police officers will bar the district attorney from subsequently deciding to pursue a prosecution. The judiciary, in its supervisory power, always has the authority to fashion a remedy that meets the needs of the situation at hand. It is precisely this power of the court to fashion a remedy which negates the majority's fear that the police will usurp the proper functions and authority of the district attorney.

In fact that power and authority of the court forms the basis for the holdings in each of the cases cited by the majority in their present opinion. I find that the majority has incorrectly interpreted the cases which it cites for the proposition that the district attorney has the authority to decide whether charges should be brought in any given case. The initial case cited by the majority as authority for the holding in the case at bar, is set forth by a partial quotation from *Commonwealth v. Di-*

*Pasquale,* 431 Pa. 536, 540–41, 246 A.2d 430, 432 (1968); the entire quotation reads as follows (the highlighted portion was not quoted by the Majority):

A District Attorney has a *general* and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case. [citations omitted]. **But this broad general power of a District Attorney is subject to the right and power of a Court (a) to provide generally for the orderly administration of criminal justice, including the right and power to supervise all trial and all Court proceedings, and (b) to protect all of a defendant's rights to a fair trial and due process under the Constitution of the United States and the Constitution of Pennsylvania.**

In fact, in the *DiPasquale* case, this Court refuted the district attorney's contention that his office possessed the exclusive authority to decide whether or not charges should be brought in any given case.

In *DiPasquale,* the trial court had refused the district attorney's request to *nolle pros* a murder indictment. The district attorney had been reluctant to go to trial as the only witness had recanted his testimony. The district attorney pulled the case from the trial list on six occasions hoping for another witness, when finally, the accused filed a habeas corpus motion on the basis that he was being denied the right to a speedy trial. Rather than argue the habeas corpus motion, the district attorney sought to dismiss the charges, thus allowing him to refile, without prejudice, if and when another witness appeared. The trial court refused to permit the *nolle pros* and required that the case be tried. The accused was acquitted and the district attorney appealed; arguing that the court had no power to order a trial where the district attorney has chosen to *nolle pros.* This Court found no merit to the argument. Rather, this Court clearly held that the general power of the district attorney to prosecute criminal actions is subject to the supervisory authority of the courts.

*Commonwealth v. Whitaker,* 467 Pa. 436, 359 A.2d 174 (1976), another case relied upon by the majority, presented a scenario slightly different than the one before the Court in *DiPasquale.* In *Whitaker* the trial court had granted the district attorney's request to *nolle pros* a murder complaint and subsequently also granted the district attorney's request to vacate the *nolle pros.* After vacating the *nolle pros* the trial judge then dismissed the complaint for violation of the accused's right to a speedy trial as codified in Pa.R.Crim.P., Rule 1100. The district attorney appealed, arguing that the time period which elapsed between when the *nolle pros* was granted and when it was vacated cannot be considered in determining whether or not a speedy trial violation has occurred, because a decision to *nolle pros* is wholly within the discretion of the district attorney. The Court rejected this argument and reiterated their holding from *DiPasquale:* "the district attorney's power to decide whether and when to prosecute, and whether and when to continue or discontinue a case is subject to the power of the court to supervise all court proceedings and to protect the accused's right to a fair trial." *Whitaker* at 443, 359 A.2d at 177.

Also cited by the majority is, *Commonwealth v. Eisemann,* 276 Pa.Super. 543, 419 A.2d 591 (1980), wherein the Superior Court discussed the discretionary authority of the district attorney to decide whether or not to approve a private criminal complaint. *See* Pa.R.Crim.P., Rule 106, formally Rule 133. In that case the district attorney had declined to proceed with a criminal complaint and his decision had been upheld by the court of common pleas. On appeal the Superior Court affirmed, holding that the discretion of the district attorney in such matters should be upheld "absent a gross abuse of discretion." *Id.* at 546, 419 A.2d at 593. In other words, if the court found an abuse of discretion the court had the power to reverse a decision of the district attorney.

In each of the above cited cases, which were relied upon by the majority, it is clear that although a district attorney possesses general authority to decide what charges shall be brought to trial and when the trial shall commence, that

authority is always subject to review by the judiciary. By the same token, in any given case where the police have entered into a non-prosecution agreement and the district attorney chooses to override the decision of the police and prosecute the matter, the court in its supervisory power has the authority to decide what effect the non-prosecution agreement shall have in the case. As the Commonwealth suggested in this case, suppression of the information garnered via the non-prosecution agreement may be the best remedy in certain cases. However, the remedy is within the discretionary power of the trial court to ascertain, which brings me to my initial point: the real issue in this case is whether or not the trial court abused its discretion in granting the motion to dismiss.

A motion to dismiss is a pretrial motion addressed to the discretion of the trial court and a ruling thereon will not be reversed by an appellate court absent an abuse of that discretion. *Commonwealth v. Gemelli,* 326 Pa.Super. 388, 474 A.2d 294 (1984); *Commonwealth v. Niemetz,* 282 Pa.Super. 431, 422 A.2d 1369 (1980). Recently this Court set forth the following comprehensive definition of "discretion" in *Coker v. S.M. Flickinger Company,* 533 Pa. 441, 447–8, 625 A.2d 1181, 1184–5 (1993):

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. [citation omitted].

In the case now before us, the trial court held a hearing on the defendants' motion to dismiss and found clear and substantial grounds for granting that motion. In order to place

the trial court's decision within the proper framework, a brief recitation of the essential facts is necessary.

The defendants are a husband and wife who reside in the Upper St. Clair area of Allegheny County. Pursuant to an investigation in an unrelated matter, the City of Pittsburgh police obtained a search warrant for the defendants' home.[1] The warrant was obtained upon the affidavits of two officers of the Pittsburgh Bureau of Police. Under the requirements of the Statewide Municipal Police Jurisdiction Act, 42 Pa.C.S. § 8953(a)(1), officers from Upper St. Clair Township and the Allegheny County Police Department, accompanied the Pittsburgh police during the execution of the search warrant. The warrant was executed on November 13, 1990. All items of contraband seized at the time of the search were under the control and supervision of the Pittsburgh police.[2]

Counsel for the defendants discussed the ramifications of this search with Sergeant Thomas of the Pittsburgh police, who was in charge of the investigation. Because of the de minimis amount of cocaine obtained in the search and serious questions as to the validity of the search warrant, Sergeant Thomas agreed with counsel for the defendants that drug possession charges would not be pursued if the defendants cooperated fully with the police. The defendants agreed and an interview was arranged during which the defendants fully cooperated by answering all of the questions put to them by the investigating officers. Although the exact nature of the interview was not revealed during the hearing on the motion to dismiss, the record indicates that the questioning centered on where the defendants had obtained the controlled substances found during the search of their home.

1. The unrelated matter was an investigation of sexual abuse charges which were dismissed when it became apparent that the allegations were a product of the alleged victims' imagination. *See Commonwealth v. Stipetich,* Allegheny County Court of Common Pleas, CC No. 91–15656.

2. The contraband seized pursuant to the warrant consisted of cocaine residue found on items of drug paraphernalia; three pill boxes containing a total of 28 percocet tablets; two analgesic preparations containing propoxyphene napsylate, (a schedule IV controlled substance); one dexedrine tablet and a small amount of marijuana.

Ten months later, on September 9, 1991, officers of the Allegheny County Police Department charged the defendants with simple possession, possession of a small amount of marijuana and possession of drug paraphernalia. The charges brought by the Allegheny County Police were based upon the items seized during the November 1990 search of the defendants' home conducted by the Pittsburgh Bureau of Police. The defendants moved to dismiss the charges on the basis of the agreement not to prosecute which they had made with Sergeant Thomas of the Pittsburgh police.

At the hearing on the motion to dismiss the district attorney argued that the non-prosecution agreement was invalid because the Pittsburgh police had no jurisdiction to initiate charges in the first instance as the crime occurred in Upper St. Clair. The focus of the district attorney's argument at the hearing was the fact that the search occurred outside the jurisdiction of the Pittsburgh Bureau of Police, therefore only police with jurisdiction in Upper St. Clair Township could have brought the instant charges, thus, Pittsburgh police had no original jurisdiction to negotiate with the defendants. The district attorney also argued that the non-prosecution agreement was invalid as the parties thereto failed to obtain the approval of the district attorney. And, finally, the district attorney argued that even if due process would confer upon the defendants an equitable right to enforce a non-prosecution agreement that they had complied with, enforcement would best be served by suppression of the information garnered pursuant to the agreement. (See transcript of hearing October 8, 1991, pp. 59–60).

The trial court, upon considering the facts of the case and the arguments of counsel and the due process rights of these particular defendants, found that suppression would be an insufficient remedy *in this case*. Suppressing the statements made to Sergeant Thomas as to where the defendants had obtained the drugs would be irrelevant to a prosecution of these two defendants on charges of possessing the drugs. The trial judge found that "the specific circumstances regarding the instant cases, when viewed in their entirety, mandated

that the defendant's Motions to Dismiss be granted." (Opinion of the Trial Court, p. 4).

The true focus of this case must center upon what due process protections should be afforded these defendants, given the specific facts and circumstances of this case. Due process is a flexible concept. Substantive due process is the esoteric concept interwoven within our judicial framework to guarantee fundamental fairness and substantial justice. *Kinsella v. United States*, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960). How the protections embodied within the idea of substantive due process shall be enforced is a matter for the judiciary to decide in each individual case. *Baltimore & O.R. Co. v. United States*, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209 (1936).

As all the previously cited cases have emphatically held, the decision of a district attorney whether or not to prosecute a given case is subject to review by the court. *DiPasquale; Whitaker;* and *Eisemann.* Thus, the real question is whether or not the trial court abused its discretion in granting the motion to dismiss over the objection of the district attorney. I find nothing in the majority opinion which even addresses how or why the trial court abused its discretion. Given the particular circumstances of this case and the nature of the interests involved I am loathe to find that the trial court abused its discretion in granting the motion to dismiss. It is my belief that due process required the result arrived herein. Further, I do not believe that the decision to grant the motion to dismiss will create the dreaded havoc within our law enforcement community prophesied by the majority.

Accordingly, I cannot agree with the result or the reasoning of the Majority and must dissent for the reasons I have stated.