Thomas P. Agresti, Judge, United States Bankruptcy Court
On November 27, 2018, the Court heard argument on the Respondent District Attorney of Allegheny County's Motion for Leave to File Supplemental Response to Debtor/Movant's Motion to Enforce Automatic Stay , Doc. No. 74, ("Motion to Supplement") followed by an evidentiary hearing on the Debtor's Motion to Enforce the Automatic Stay , filed at Doc. No. 27, ("Jenereski Motion") as well as the Debtor's additional Motion to Enforce the Automatic Stay, filed at Doc. 31 ("Ikonomovic Motion"), (the Jenereski Motion and Ikonomovic Motion referenced together as the "Stay Motions"). Having heard argument from the Parties and after considering the evidence presented, for the reasons stated below the Court will grant the Motion to Supplement in part and deny the Stay Motions .[1]
PROCEDURAL BACKGROUND
On October 5, 2017, Debtor Christian J. Sheasley filed a Chapter 7 bankruptcy petition. The petition indicated that the Debtor had been self-employed as the owner, operator, managing member and alter ego of a business known as Linx Creative Kitchen & Bath, LLC ("Linx"). Among the unsecured creditors listed in the petition were Stan Jenereski ("Jenereski") and Milos Ikonomovic, with both shown as a "business debt" claim of unknown amount.
On January 12, 2018, the Chapter 7 Trustee filed a Report of No Distribution indicating that there would be no assets available to distribute to creditors of the Debtor. That same date Milos Ikonomovic and his wife Snezana Ikonomovic ("Ikonomovics") filed an adversary proceeding *76 against the Debtor at Adv. No. 18-01005-TPA asserting that they had a claim against the Debtor arising out of a kitchen installation contract for their home and that under 11 U.S.C. §§ 523(a)(2), (4) , and (6) their claim against the Debtor was non-dischargeable. On March 1, 2018, the Ikonomovics filed a motion seeking to discontinue the adversary proceeding because they said they had reached a "resolution" of the matter, without explaining what that resolution entailed. On March 21, 2018 the Court granted the Ikonomovics' motion and the adversary was closed on April 6, 2018. Jenereski never sought to have his debt declared non-dischargeable during the bankruptcy case. On May 10, 2018, an order was entered at Doc. No. 20 discharging the Debtor. The case was closed on July 30, 2018.
On August 21, 2018, the Debtor filed a Motion to Reopen his case, along with the Jenereski Motion and the Ikonomovic Motion , both of which seek to have the Respondent in both matters, Stephen A. Zappala, Jr., District Attorney of Allegheny County ("the DA"), enjoined from continuing to proceed with pending criminal actions against the Debtor in the Allegheny County Court of Common Pleas because they are allegedly in violation of the discharge order.[2] The only Responses to the various motions were filed by the DA. See Doc. Nos. 40, 41, 43, 45. An initial hearing was held on September 27, 2018, and the Motion to Reopen was granted on October 4, 2018. See Doc. No. 68. On that same date, and based on the representations of Counsel made at the September 27th hearing that no additional evidence beyond what had already been presented in the Stay Motions and the Responses was needed, the Court also issued an order stating that a final hearing on the Stay Motions , limited only to argument, would be held on October 29, 2018. See Doc. No. 69.
On October 10, 2018, the DA filed the Motion to Supplement pursuant to which he seeks to supplement his Response to the Stay Motions by adding documents that reference three other criminal prosecutions pending against the Debtor in Butler County, PA. On October 23, 2018, the Debtor filed a motion seeking a continuance of the October 29th hearing on the grounds that he wanted to conduct discovery to further support the Stay Motions . The Court issued an order on October 23, 2018, stating that, while it was troubled by the Debtor seeming to raise new factual matters at the last minute, out of an abundance of caution it would grant the continuance and allow evidence to be presented at the hearing. See Doc. No. 82. The continued hearing was originally scheduled for November 15, 2018 but subsequently moved to November 27, 2018. Both the Debtor and the DA were represented by counsel and were given the opportunity to be fully heard at the November 29th hearing. No live testimony was presented by either side at the hearing, just documentary exhibits.
FACTUAL BACKGROUND
(A) Jenereski Motion
The criminal prosecution involved in the Jenereski Motion stems from a February 28, 2017 contract between Linx and Stanley Jenereski pursuant to which Linx was to remodel the kitchen in Jenereski's home *77 on Gibsonia Road in Richland Township, Allegheny County, for a total price of $30,746. Jenereski paid Linx an initial deposit of $18,448 that date (60% of contract price), which he understood was to be used to buy materials. Thereafter, Jenereski paid an additional $9,224 (30% of contract price) on July 31, 2017, the date work started. Work on the project was performed through subcontractors retained by the Debtor, but never completed. Jenereski began questioning the subcontractors about the slow pace of work and asking when it would be completed. He was eventually told by one subcontractor that the Debtor was preparing to file bankruptcy and he (the subcontractor) would not be returning to complete the work.
Jenereski went to his local police department and related the situation to the police. The police officer to whom he had spoken informed him that he should pursue it as a civil matter and Jenereski did so by filing a complaint in Magisterial District Court. A hearing on that complaint was scheduled, but prior thereto the Debtor filed his bankruptcy petition and that matter was halted by the automatic stay. Jenereski then contacted the DA's office and inquired about the possibility of criminal charges being brought against the Debtor.
On January 17, 2018, Timothy Cross, a detective from the DA's office, filed a criminal complaint against the Debtor alleging a number of charges against him arising out of the Jenereski contract. That criminal complaint was the subject of a preliminary hearing held before District Magistrate Judge Swan on February 28, 2018. At the hearing the DA was represented by Bjorn Dakin and the Debtor was represented by Sean Logue, who is also his attorney in the bankruptcy. District Magistrate Judge Swan found sufficient evidence for the case to proceed and it was filed in the Allegheny County Court of Common Pleas on March 5, 2018, at Docket No. CP-02-CR-0002699-2018, and captioned "Commonwealth of Pennsylvania v. Christian J. Sheasley."
The four counts charged in the criminal complaint included: (1) home improvement fraud pursuant to 73 P.S. § 517.8 ; (2) deceptive or fraudulent business practices pursuant to 18 Pa. C.S.A. § 4107 ; (3) theft by failure to make required disposition of funds pursuant to 18 Pa. C.S. § 3927 ; and, (4) receiving stolen property pursuant to 18 Pa. C.S. § 3925 - all of which are indicated as felonies of the second or third class. In the complaint, the DA indicates that if convicted of any of these counts the Debtor could face a sentence of up to 7 years in prison, a fine of up to $15,000, and an order of criminal restitution.
(B) Ikonomovic Motion
The criminal prosecution involved in the Ikonomovic Motion arose out of a kitchen remodeling contract dated May 3, 2017, in the total amount of $39,131. The Ikonomovics paid the Debtor $23,478 that date (60% of contract price). No work was ever done on the contract. On September 28, 2017, the Ikonomovics contacted the Mt. Lebanon Police Department to complain about the situation. The Debtor filed his bankruptcy on October 5, 2017, and on October 18, 2017, Officer Ty Kegarise of the Mt. Lebanon Police Department filed a criminal complaint against the debtor in the office of District Magistrate Judge Laratonda, charging the Debtor under 73 P.S. § 517.8 with receiving advance payment for services and failing to perform, a felony of the third class. On January 3, 2018, the matter was waived to the Allegheny County Court of Common Pleas where it was docketed on January 8, 2018, at No. CP-02-CR-0000102-2018.
As was indicated above, on January 12, 2018, the Ikonomovics also filed an adversary *78 proceeding in the pending bankruptcy case objecting to the discharge of their claim. They reached a settlement with the Debtor on or about February 12, 2018 pursuant to which the Debtor was to pay the Ikonomovics $25,000 in full satisfaction of their claim. It is the Court's understanding that this payment has been made and that the source of the funds for the payment was the Debtor's father.[3]
DISCUSSION
(A) Motion to Supplement
As an initial matter, the Court must decide the Motion to Supplement . In it, the DA seeks to add to the evidentiary record documentation concerning three other pending criminal prosecutions against the Debtor from Butler County. The DA states in the Motion to Supplement that, following the entry of the Court's October 4, 2018 Order , Doc. No. 69, he discovered that the Debtor is a defendant in three Butler County criminal cases.[4]
The DA seeks permission to amend his Responses to the Stay Motions by adding copies of the docket sheets and criminal complaints filed in the Butler County cases. He also seeks to add a copy of an "Application for Continuance" that the Debtor filed in those cases on or about September 6, 2018 in which he indicates that a continuance was needed due to "continuing negotiations and defendant attempting to gather restitution."
The DA argues that the Butler county materials are relevant here with respect to a number of legal questions that are involved in this case, including whether Debtor has an adequate remedy at law, whether he will suffer irreparable harm to a federally protected right if the Stay Motions are denied, whether the Debtor is attempting to use the bankruptcy stay in a strategic or arbitrary manner to pick and choose between criminal prosecutions, and whether all the various criminal prosecutions provide evidence of a pattern of misconduct by the Debtor that should not be shielded by the automatic stay. The Debtor does not dispute the authenticity of any of the Butler County materials that are at issue in the Motion to Supplement , but he argues that the Butler County cases are irrelevant for any purposes here.
The Court finds that evidence of the Butler County cases cannot be admitted for the purpose of bolstering the contention that the DA filed the criminal cases involved in the Stay Motions in good faith. That is so because uncontroverted evidence is that the DA was not even aware of the Butler County cases until sometime after October 4, 2018, well after the Allegheny County criminal cases were initiated. Therefore, the Butler County cases could have played no role in the DA's decision to pursue the Allegheny County criminal charges against the Debtor.
The Court also finds that evidence of the Butler County cases cannot be admitted to support the claim that the Debtor is likely to be found guilty of the charges in the Jenereski and Ikonomovic matters. The Court reaches this conclusion because (a) it appears the Butler County *79 cases have not been completed and no finding of guilt has been made in them, and (b) even if there have been any finding of guilt in those cases F.R.E. 404(b)(1) would preclude the Court from using that as evidence that the Debtor acted in the same way here.
That having been said, the Court does believe that evidence of the Butler County cases can be admitted here for the very limited purpose of showing that the Debtor is facing other criminal prosecutions in addition to those involved in the Stay Motions yet he is not seeking to have those other prosecutions enjoined. That is relevant on the question of whether the Debtor would suffer irreparable harm if the Stay Motions are denied. Therefore, the Court will grant the Motion to Supplement and allow the evidence in for that very limited purpose, although frankly it adds little weight to the DA's case since the point is already supported by the Ripple and Fritz criminal prosecutions in Allegheny County, which remain pending and which the Debtor is no longer seeking to enjoin. See n. 2, supra .
(B) Stay Motions
Before turning to a discussion of the merits of the Stay Motions , the Court notes that the prayer for relief in both is for "an order directing Respondents ... to dismiss the criminal complaint and barring them from participating in said criminal prosecution of the Debtor." In substance this is a request for injunctive relief, though that term does not appear in the Stay Motions.[5] As such, this matter should have been brought as an adversary proceeding. See Fed.R.Bankr.P. 7001(7) . The Court could dismiss the Stay Motions for that technical reason, but it will not do so since the point was not raised by the Respondents and because it is satisfied that sufficient notice and due process protections have been afforded despite the formal irregularity of the proceeding. The Court also notes that in the Stay Motions the Debtor is not seeking monetary damages against any of the Respondents - for example, based on an alleged violation of the discharge injunction pursuant to 11 U.S.C. § 524(a)(2) - so that aspect of potential relief plays no role in the Court's determination, which is limited solely to the request for injunctive relief.
As originally stated in its October 4thOrder , Doc. No. 69, the Court believes that a decision on the Stay Motions is primarily governed by the Third Circuit case of In re Davis , 691 F.2d 176 (3d Cir. 1982). In that case, the Davises had purchased goods from four different vendors and paid for them with checks that were dishonored by their bank. One of the vendors instituted a "bad check" criminal complaint against Mr. Davis, and the next day the Davises filed a Chapter 7 bankruptcy petition. After the bankruptcy filing, three other vendors, who had not been listed as creditors in the petition, also instituted criminal complaints against Mr. Davis. The criminal cases were brought pursuant to a Delaware statute that, in addition to other possible sanctions, required a convicted defendant to make restitution to the victim of the bad check. The Davises sought and obtained a TRO from the bankruptcy court enjoining the criminal proceedings. None of the vendors objected to the discharge of their respective debts in the bankruptcy case, and in due course the Davises were granted a discharge.
Following the discharge, the bankruptcy court held a hearing to determine whether the criminal cases should be permanently *80 enjoined because the potential of a restitution order in such cases could subvert the discharge. The bankruptcy court ultimately decided not to issue a permanent injunction, which decision on appeal the district court affirmed. Thereafter, the Davises appealed to the Third Circuit, which also affirmed the bankruptcy court's original decision.
The Davis court opinion began by pointing out that in most instances, a federal court does not have the power to enjoin state court proceedings, citing the Anti-Injunction Act , which provides:
A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments
28 U.S.C. § 2283. The Bankruptcy Code is an "expressly authorized" exception to the general prohibition, however, so in the right circumstances a bankruptcy court can enjoin a state criminal prosecution. Davis , 691 F.2d at 177-78. The grant of such authority, however, in no way diminishes the principles of equity and comity that require considerations of restraint by a federal court when asked to enjoin a state court proceeding. 691 F.2d at 178 (citing Mitchum v. Foster , 407 U.S. 225, 243, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) ).
Relying primarily upon Younger v. Harris , 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Davis court enunciated the following principles of equity and comity that must be applied when a bankruptcy court is asked to enjoin a state court criminal proceeding:
• the court should not act to restrain a criminal prosecution when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.
• absent some evidence that the Debtor will not be able to raise a Supremacy Clause challenge in the state court, the possible imposition of a mandatory restitution penalty in the criminal case, while of concern under the Supremacy Clause of the U.S. Constitution, is of itself an insufficient reason to enjoin the criminal case.
• the cost, anxiety and expense of defending oneself in a good faith criminal prosecution does not constitute irreparable injury.
• if the state prosecution is brought in bad faith or for purposes of harassment the bankruptcy court can enjoin it.
• a state has an independent interest in prosecuting a crime going to the integrity of commercial transactions within its borders, over and above the financial interest of the complaining witness.
• absent evidence that the state had any reason to doubt the validity of the charges made by the complaining witness, or that the state failed to exercise independent judgment in pursuing the prosecution, the intentions of the complaining witness in pursuing the criminal charge is not controlling in judging the good faith of the state in prosecuting the action
• with respect to comity, the court should be especially cautious in enjoining state criminal proceedings because of the state's paramount interest in protecting its citizens through its police power.
See, generally , 691 F.2d at 178-79. Although Davis was decided more than 35 years ago, it remains good law and was applied as recently as last year in a bankruptcy case rejecting an effort to enjoin a state court criminal prosecution. See *81 In re Perry Petroleum Equipment Ltd., Inc. , 564 B.R. 821 (Bankr. M.D. Pa. 2017).
When the Davis principles are applied as to the Jenereski Motion the Court has little difficulty in concluding that it must be denied. First, the Debtor provided no evidence to show that he lacks an adequate remedy at law or will suffer irreparable injury if that criminal prosecution is not enjoined. Nor is there anything to indicate that the Debtor will not have a full opportunity to defend himself in the criminal case at the trial court level, to argue against the imposition of a restitution order on the basis of the Supremacy Clause in the event he is convicted, or to take an appeal in the event of any adverse ruling.
The Court also finds it significant that the Debtor is facing five other pending criminal prosecutions, in addition to the two involved in the Stay Motions, and is not attempting to have those cases enjoined.[6] As argued by the DA, it is difficult to see how the Debtor can be said to have no adequate remedy at law or to be facing irreparable injury with respect to these two prosecutions, but not as to the other five.
The timing of the Jenereski Motion also detracts from any possible finding of irreparable harm. The Court notes that the Debtor did not attempt to have the Jenereski prosecution stayed until August 21, 2018, approximately 7 months after the criminal complaint in the case was filed. The bankruptcy case was open when the criminal complaint was filed, open when the preliminary hearing was held before District Magistrate Judge Swan, and open when the case was sent to the Common Pleas Court. If the Debtor thought the criminal proceeding was an improper attempt to use the criminal process to collect a debt it would have been easy for him to file a motion or adversary proceeding to that effect in response to any of these events, nevertheless he waited for months to do so, and even then, after the case had been closed. Perhaps the Debtor thought any such effort during the initial phase of the bankruptcy would be doomed to failure given that 11 U.S.C. § 362(b)(1) recognizes the commencement or continuation of a criminal proceeding as an exception to the automatic stay. But even assuming if that was the case, other than actual receipt of his general discharge, the Debtor has not explained what has changed in the interim that would lead to a different result now.
Second, the Debtor provided no persuasive evidence that the DA is pursuing the prosecution in bad faith or for purposes of harassment - certainly not enough to overcome the presumption of good faith that he is entitled to enjoy under the principle of comity. See Perry Petroleum , 564 B.R. at 826 ("principles of comity dictate that I presume that the Commonwealth is prosecuting the criminal actions on behalf of the public to protect the integrity of commercial transactions and is not serving as the handmaiden of the complaining witness"). The only thing that the Debtor pointed to as allegedly showing bad faith is some testimony given by Jenereski at the preliminary hearing in the criminal case held on February 28, 2018 before Magisterial District Judge Swan. Jenereski testified on cross examination under questioning by the Debtor's attorney that prior to the bankruptcy filing he had contacted the Northern Tier Police Department to complain about the failure to perform by Linx and they told him that he should pursue the matter civilly. He further testified that he did file a civil suit, but it was then stayed by the bankruptcy filing. See Debtor's Exhibit A at 19-20. The following exchange *82 then occurred on re-direct examination by the DA's attorney:
Asst. DA. Did they [i.e., Northern Tier Police Department] give you any further instructions depending the outcome of the civil case?
Jenereski. Yes. They said if the civil case doesn't work out for you, you should wait anywhere from three to six months to file criminal charges because they believed it was a criminal case.
Debtor Ex. A at 22-23.
The Debtor argues that both the police and the DA are agents of the Commonwealth, and that the above testimony shows that the DA really believes that the matter should only be civil in nature, and that the DA must therefore be pursuing the criminal case only on behalf of the private interest of Jenereski and not in the public interest. According to the Debtor this demonstrates bad faith sufficient to enjoin the criminal proceeding.
The DA responds by arguing that whatever the police may have thought or told Jenereski is irrelevant because the DA exercised independent judgment, and decided that the Debtor should be prosecuted criminally. The DA points out that the criminal complaint in this matter was filed by a detective from his office and not anyone from the local police force.
The Court begins with an observation that the purported statement made by the Northern Tier Police Department officer to Jenereski is not particularly compelling support for the position advanced by the Debtor, even if it were found to be binding on the DA. The police officer himself indicated that criminal charges would be appropriate if the civil matter was not successful. His recommendation to give the civil remedy a try first before resorting to a criminal charge could just as easily reflect a common sense, practical approach by the officer toward resolution of a problem, instead of some thought-out reflection on the suitability of criminal treatment. Be that as it may, the Court will for present purposes and "argument only" assume that the officer's statement is capable of being relevant evidence demonstrating a bad faith prosecution and proceed to consider whether it binds the DA.
In Pennsylvania, district attorneys "have the power and the duty to represent the Commonwealth's interests in the enforcement of its criminal laws." Comm. ex rel. Specter v. Bauer , 437 Pa. 37, 261 A.2d 573, 575 (1970). Moreover, this power is an exclusive one that may not be interfered with by other public officials. For instance, in Bauer the issue was whether the Philadelphia Home Rule Charter required the City Solicitor for Philadelphia to represent the Philadelphia District Attorney in a federal lawsuit attacking the constitutionality of a state criminal statute. In rejecting that contention, the court stated:
The City Solicitor, a locally appointed official, may not be permitted to infringe upon the District Attorney's powers or functions in the prosecution of the criminal law. The District Attorney of Philadelphia County, no less than district attorneys in any other county of this Commonwealth, is the sole public official charged with the legal responsibility of conducting 'in court all criminal and other prosecutions, in the name of the Commonwealth.' Act of July 5, 1957, supra. The District Attorney must be allowed to carry out this important function without hindrance or interference from any source
Bauer , 261 A.2d at 576 (emphasis added). See also, e.g., Williams v. Fedor , 69 F.Supp.2d 649, 660 (M.D. Pa. 1999) (in Pennsylvania, only the state's Attorney General may supersede a district attorney *83 in connection with prosecutorial decisions); Miller v. County of Centre , 173 A.3d 1162, 1174 (Pa. 2017) (district attorneys are the chief law enforcement officers at the county level, citing 71 P.S. 732-206(a) ).
A district attorney's prosecutorial powers and discretion may not be impinged by the actions of local police officers. Commonwealth v. Stipetich , 539 Pa. 428, 652 A.2d 1294 (1995) involved a criminal prosecution for possession of controlled substances. The lead police officer who conducted the investigation leading to the charges had informed the defendants' attorney that if the defendants would answer questions about the source of the drugs they would not be criminally charged. The defendants did answer the questions of the police, but were subsequently charged anyway by the district attorney of Allegheny County. They moved to dismiss the charges on the basis of the "nonprosecution" agreement they had made with the police. The Pennsylvania Supreme Court rejected the defendants' argument, stating:
The district attorney's power to prosecute cannot be restricted by the actions of municipal police officers who might, in any given case, deem it worthless or ill-advised to prosecute. While the police exercise, as a practical matter, a certain discretion in deciding whether to make an arrest, issue a citation, or seek a warrant, the ultimate discretion to file criminal charges lies in the district attorney. Police officers have no authority to enter agreements limiting the power of the district attorney in this regard.
... The legislature could not have intended that duties of the district attorney would be stripped away by actions of any of the thousands of municipal police officers in the Commonwealth. Affording police officers authority to enter agreements that prevent the district attorney from carrying out his duties would present a clear infringement of powers which the constitution and the legislature, as well as our case law, have reposed in the district attorney.
Stipetich , 652 A.2d at 1295.
If an actual agreement not to prosecute made by local police concerning a potential criminal matter is not binding on a district attorney because it would improperly interfere with his prosecutorial discretion, than a fortiori a stray comment or expression of opinion made by a police officer during the course of an investigation can in no way be used against the district attorney in an attempt to show that a criminal prosecution was brought in bad faith or for purposes of harassment. Since the "excluded" police officer's statement was the only evidence presented by the Debtor to show the Jenereski prosecution to be in bad faith or for purposes of harassment, the Debtor has failed to meet his burden of proof as to the Jenereski Motion .
The same conclusion must be reached with respect to the Ikonomovic Motion . First, for the same reasons as discussed above with respect to the Jenereski Motion , again Debtor fails to show he lacks an adequate remedy at law in the court hearing the criminal case, or that he will suffer irreparable harm if relief is not granted. Second, again the only evidence he puts forward to show bad faith and/or harassment in the prosecution are the settlement agreement that was reached between the Debtor and the Ikonomovics to resolve the adversary proceeding filed by the Ikonomovics in the bankruptcy case,[7] and an e-mail message from a local police officer who was involved in investigating *84 the matter. For the reasons already discussed above, the Court does not believe either of these can be imputed to the DA so as to circumscribe his prosecutorial discretion.
The Ikonomovic Motion does differ from the Jenereski Motion in one respect in that the charges were initiated by a local police officer from the Mt. Lebanon Police Department rather than by a detective from the DA's office. That, however, is of no moment in the Court's view. Regardless of how the criminal case was initiated, the significant fact is that DA has confirmed that he, in the exercise of his own judgment, has decided the case should continue to be pursued and the Debtor has shown no evidence to indicate that judgment was tainted in any way by bad faith.
Perhaps most problematic for the Debtor's contention however is the settlement agreement reached between he and the Ikonomovics. Debtor Ex. B. By its terms, the matter of restitution has been resolved between the Parties taking the issue of restitution in the proceeding completely off the table if the Debtor ultimately is convicted of the crimes alleged in that particular criminal proceeding. Since the "restitution issue" has already been resolved, the Debtor's argument that the DA is proceeding in bad faith in that matter, since he is seeking restitution as an "end run" to the bankruptcy discharge, completely falls apart.
In conclusion, the Court finds that the Debtor has an adequate remedy at law, that he has not shown he could be irreparably harmed and that he has not shown that the DA is pursuing the criminal actions in bad faith or for purposes of harassment. The Debtor has therefore failed to meet his burden of proof under the standard announced in Davis and his requests for relief must be denied.
AND NOW , this 18th day of December, 2018 , for the reasons stated above, it is hereby ORDERED, ADJUDGED and DECREED that:
(1) The Motion to Supplement is GRANTED in part, in that the records of the Butler County criminal case are admitted as a supplement to the DA's Response to the Stay Motions but only for its limited purpose of showing that the Debtor is facing criminal prosecution in these other matters but is not seeking to have them stayed.
(2) The Motion to Enforce Automatic Stay filed at Doc. No. 27 is DENIED , with prejudice.
(3) The Motion to Enforce Automatic Stay filed at Doc. No. 30 is DENIED , with prejudice.
(4) This bankruptcy case shall be reclosed effective January 3, 2019 , unless on or before January 2, 2019, the Debtor either files a motion for reconsideration or a notice of appeal.

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157(a) and 1334 . The Stay Motions are themselves core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) and (G) . The Motion to Supplement raises an evidentiary issue within the course of the core proceedings of the Stay Motions . This Memorandum Opinion represents the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052 and 9014(c) .

That same day the Debtor also filed two other motions very similar to the Stay Motions, involving two other pending criminal prosecutions in Allegheny County. See , Doc. Nos. 33 ("Ripple Motion") and 36 ("Fritz Motion"). Those two motions were subsequently withdrawn by the Debtor with leave of Court and are no longer at issue. See Order of November 13, 2018, Doc. No. 91.

See Audio Transcript of Proceeding dated Nov. 27, 2018, 10:40:40, et seq.

The three cases are Butler County Court of Common Pleas Docket Nos. CP-10-CR-0000288-2018, CP-10-CR-0000289-2018, and CP-10-CR-0000290-2018. All three of the cases involve charges for conduct similar to that involved in the Stay Motions , i.e., allegations that the Debtor received funds pursuant to a home improvement contract and then did not complete the work. The alleged victims in all three of the cases were listed as unsecured creditors in the Debtor's bankruptcy petition.

The proposed orders filed by the Debtor accompanying the Stay Motions do include the word "enjoined" in describing the relief to be granted.

See n. 2 and 3, above.

The Court notes that the DA was not a party to the settlement agreement. The settlement agreement merely provides that upon receipt of the settlement amount the Ikonomovics, through their attorney, would write a letter to the DA "requesting" that the criminal case be withdrawn and discontinued. Debtor Ex. B at ¶ 16. There was no evidence presented at the hearing as to whether such letter was ever sent. Assuming it was sent, it is clear that there was no assurance in the settlement agreement that the DA would accede to such request,. Despite the settlement agreement being completely ineffectual to demonstrate bad faith in the criminal prosecution, the Court assumes the Debtor will be free to raise it in that case for purposes of defense or mitigation.