[J-100-2020] [MO: Wecht, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 39 MAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court at No. 3314 EDA 2018 dated |
| | : | December 10, 2019 Affirming the |
| v. | : | Judgment of Sentence dated |
| | : | September 25, 2018 of the |
| | : | Montgomery Court of Common |
| WILLIAM HENRY COSBY JR., | : | Pleas, Criminal Division, at No. CP- |
| | : | 46-CR-3932-2016 |
| Appellant | : | |
| | : | ARGUED: December 1, 2020 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DOUGHERTY**                                  **DECIDED: June 30, 2021**

By publicly announcing that appellant William Cosby would not be charged with any crimes related to Andrea Constand — a decision apparently made, in part, to force Cosby to testify in Constand's future anticipated civil suit — former Montgomery County District Attorney Bruce Castor intended to, and in fact did, force Cosby to give up his Fifth Amendment right against self-incrimination. Then, years later, Castor's successor used the damaging evidence Cosby turned over in the civil case to convict him of the same criminal offenses he had previously been induced to believe were off the table. I am constrained to agree with the majority that due process does not permit the government to engage in this type of coercive bait-and-switch. However, while I share in that conclusion, and agree with much of the majority's well-reasoned analysis, I part ways from it in several material respects — most notably the remedy.

## A.

I begin by addressing an underlying issue that the majority says little about but which I believe looms large: Castor's apparent belief that, as an elected district attorney, he could forever preclude his successors from prosecuting Cosby. *See, e.g.*, N.T. *Habeas Corpus* Hearing, 2/2/2016 at 64-66 ("I made the decision as the sovereign that Mr. Cosby would not be prosecuted no matter what."); *id.* at 66-67 (emphasizing it was "absolutely" his intent to remove "for all time" the possibility of prosecution); *id.* at Exh. D-5 (alleging in an email to his successor that he "intentionally and specifically bound the Commonwealth that there would be no state prosecution"). The majority does not directly address whether it considers Castor's belief to be an accurate statement of the law. *Cf.* Majority Opinion at 51 ("the question becomes whether, and under what circumstances, a prosecutor's exercise of his or her charging discretion binds future prosecutors' exercise of the same discretion"). Nevertheless, to the extent the majority's opinion could arguably be interpreted as signaling even a tacit approval of Castor's view, I respectfully distance myself from it.

District attorneys in this Commonwealth are constitutionally elected officers. *See* PA. CONST. art. IX, §4. However, the Constitution "is altogether silent on the question of the district attorney's powers and duties." *Commonwealth v. Schab*, 383 A.2d 819, 830 (Pa. 1978) (Pomeroy, J.). Instead these duties and powers are set by statute. *See* 16 P.S. §1402(a) ("The district attorney shall sign all bills of indictment and conduct in court all criminal and other prosecutions, in the name of the Commonwealth . . . , and perform all the duties which, prior to May 3, 1850, were performed by deputy attorneys general."). Significantly, none of this authority or our case law interpreting it remotely purports to grant to district attorneys the power to impose on their successors — in perpetuity, no less — the kind of general non-prosecution agreement that Castor sought to convey to

Cosby. It's not difficult to imagine why: If district attorneys had the power to dole out irrevocable get-out-of-jail-free cards at will and without any judicial oversight, it would invite a host of abuses.[1] And it would "effectively assign pardon power to District Attorneys, something this Court has already rejected as unconstitutional." Attorney General's Brief at 30, *citing Commonwealth v. Brown*, 196 A.3d 130, 144 n.5 (Pa. 2018) (pardon "can be granted only by the authority in which the pardoning power resides[,]" *i.e.*, the Governor).[2] So, not only is it plain that Castor's view is wrong as a matter of law; it's also dangerous to even implicitly suggest otherwise. For that reason, unlike the majority, I would expressly reject it here and now.[3]

**B.**

Beyond this point, I am largely in accord with the majority's thoughtful analysis, and I join its conclusions that Cosby's non-prosecution claim implicates due process and that contract law precepts generally — but more specifically, principles of promissory estoppel — are the most natural fit for analyzing it. I also agree that Cosby has proven

---

[1] One might reasonably wonder if such abuses were at work in this case, particularly given Castor's odd and ever-shifting explanations for his actions.

[2] Indeed, where a prosecutor seeks an immunity order for a witness, Pennsylvania's immunity statute contemplates judicial approval. *See* 42 Pa.C.S. §5947. But contrary to what the courts below concluded, this statute is irrelevant in this case because it pertains to witnesses whose assistance is sought to testify against other defendants, not for procuring testimony from defendants themselves. *See id.* at §5947(b)(1) (permitting prosecutors to seek immunity where "the testimony or other information **from a witness** may be necessary to the public interest") (emphasis added).

[3] Failure to directly condemn Castor's inappropriate behavior in this regard only invites more abuses of prosecutorial power and increases the likelihood that other defendants will detrimentally rely on similar improper inducements. In my respectful view, we should reject Castor's misguided notion outright and declare that district attorneys do not possess this effective pardon power, and thus render any similar future promises illusory and reliance thereon manifestly unreasonable. In other words, we can prospectively prevent similar deprivations of due process in the event any future district attorney might be reckless enough to act as Castor did here.

his entitlement to relief, because: "Castor reasonably expected Cosby to act in reliance upon his charging decision"; "Cosby relied to his detriment upon [Castor]'s decision not to prosecute him"; and "Cosby's reliance was reasonable[.]" Majority Opinion at 67-69. With respect to reasonableness, I find particularly apt the majority's explanation that "[i]f Cosby's reliance was unreasonable . . . , then reasonableness would require a defendant in a similar position to disbelieve an elected district attorney's public statement and to discount the experience and wisdom of his own counsel." *Id.* at 70. The constellation of these unusual conditions requires the conclusion that Cosby's reliance — particularly in the absence of any prior authority from this Court addressing whether it is lawful for a district attorney to unilaterally extend a binding, permanent non-prosecution agreement — was reasonable under the circumstances.

## C.

Where I begin to disagree with the majority is in the final stretch of its analysis. Although the majority presents a compelling discussion of the promissory estoppel and due process principles at play in this matter, *see id.* at 53-71, it ultimately concludes that "the subsequent decision by successor [district attorneys] to prosecute Cosby violated Cosby's due process rights." *Id.* at 72. I cannot agree. It is not the mere fact that another district attorney sought to prosecute Cosby after Castor made an unauthorized (and invalid) declaration there would be no such prosecution that resulted in the due process violation. Rather, it was the prosecution's use, at the subsequent criminal trial, of the evidence obtained in the civil case concerning Cosby's "use of drugs to facilitate his sexual exploits" that violated his due process rights. *Id.* at 67. This evidence would not have been available for use in the criminal case if Castor had not induced Cosby to believe he had no choice but to forfeit his Fifth Amendment right against self-incrimination in the civil depositions. Importantly, though, it was not until this evidence was actually

introduced at Cosby's criminal trial that he was **harmed**, and the due process violation occurred. *See, e.g.*, *Gov't of Virgin Islands v. Scotland*, 614 F.2d 360, 365 (3rd Cir. 1980) (if "the defendant detrimentally relies on the government's promise, **the resulting harm from this induced reliance implicates due process**") (emphasis added); *see also generally Mabry v. Johnson*, 467 U.S. 504, 507-08 (1984) ("A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution.") (footnote omitted).

The majority's misidentification of when the due process violation occurred here leads it also to supply the wrong remedy. The majority concludes: "[O]nly full enforcement of the decision not to prosecute can satisfy the fundamental demands of due process." Majority Opinion at 74; *see id.* at 73 (requiring "specific performance of D.A. Castor's decision, in the form of barring Cosby's prosecution for the incident involving Constand"); *id.* ("neither our principles of justice, nor society's expectations, nor our sense of fair play and decency can tolerate anything short of compelling the Montgomery County District Attorney's Office to stand by the decision of its former elected head"). According to the majority, "[a]nything less under these circumstances would permit the Commonwealth to extract incriminating evidence from a defendant who relies upon the elected prosecutor's words, actions, and intent, and then use that evidence against that defendant with impunity." *Id.* at 75. But the majority's own statement proves there is an obvious alternative remedy that more narrowly (but still fully) compensates Cosby for the due process violation: we can simply preclude the prosecution from "us[ing] that evidence against th[e] defendant with impunity," *i.e.* we can order it suppressed. And, in fact, this is precisely what this Court and many others have done in comparable situations.

Starting with our precedent, the majority properly identifies *Commonwealth v. Stipetich*, 652 A.2d 1294 (Pa. 1995), as most analogous to the present situation. There, Pittsburgh police officers told George Stipetich that if he answered questions concerning the source of controlled substances and drug paraphernalia found in his residence, he and his wife would not be charged. *See id.* at 1294-95. Stipetich fulfilled his part of the purported non-prosecution agreement by answering all questions posed by police, but the district attorney's office nevertheless charged him and his wife. *See id.* at 1295. The trial court, citing the alleged agreement, granted the Stipetiches' motion to dismiss the charges, and the Superior Court affirmed. *See id.* We reversed. *See id.* at 1296. Recognizing "[t]he Pittsburgh police did not have authority to bind the [district attorney]'s office as to whether charges would be filed[,]" we held "[t]he non-prosecution agreement was, in short, invalid." *Id.* at 1295.

Even though we deemed the non-prosecution agreement invalid, we continued to consider the remedy afforded by the lower courts. We observed:

> The decisions below, barring prosecution of the Stipetiches, embodied concern that allowing charges to be brought after George Stipetich had performed his part of the agreement by answering questions about sources of the contraband discovered in his residence would be fundamentally unfair because in answering the questions he may have disclosed information that could be used against him. **The proper response to this concern is not to bar prosecution; rather, it is to suppress, at the appropriate juncture, any detrimental evidence procured through the inaccurate representation that he would not be prosecuted. This places the Stipetiches in the same position as if the unauthorized promise not to prosecute had never been made by the police.**

*Id.* at 1296 (emphasis added; internal citations omitted). Despite these strong statements, the majority discards them as mere dicta. *See* Majority Opinion at 74. Be that as it may, I still find the reasoning highly persuasive — especially because the relevant passages from *Stipetich* drew support from another one of our decisions in a similar matter. *See Stipetich*, 652 A.2d at 1296, *citing Commonwealth v. Peters*, 373 A.2d 1055, 1061-62

(Pa. 1977) (suppressing testimony rather than barring prosecution where a detective with a district attorney's office "cajoled [the defendant] by telling him 'the most that would happen to him would be that he would be picked up or held as a material witness on dollar bail' or 'without bail,'" *i.e.*, he "promised immunity to the [defendant] by implying he would not be prosecuted"); *see also Commonwealth v. Parker*, 611 A.2d 199, 201 (Pa .1992) ("we need not decide whether a defective grant of immunity would estop the Commonwealth from prosecuting a parole violation because, in this case, even a perfect grant of immunity would not preclude the Commonwealth from prosecuting appellant with evidence wholly independent of his compelled testimony") (emphasis omitted). This authority refutes the majority's position that the statements in *Stipetich* do not represent "the law in Pennsylvania." Majority Opinion at 74.[4]

Moving beyond the Commonwealth, I observe other jurisdictions have likewise found that suppression, as opposed to specific performance, is often the appropriate remedy for due process violations relative to invalid non-prosecution agreements. *See People v. Gallego*, 424 N.W.2d 470, 475 n.12 (Mich. 1988) (collecting cases in which courts have "den[ied] specific performance of an unauthorized, non-plea agreement which provides that [a] defendant not be prosecuted"); *see also generally United States v. Blue*, 384 U.S. 251, 255 (1966) ("Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth amendment . . . , [o]ur numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether.").

---

[4] Significantly, Cosby agrees "if Castor's non-prosecution commitment was not binding on his successors or was somehow defective, then, alternatively, Cosby's deposition testimony should have been suppressed." Cosby's Brief at 94. To this end, Cosby also relies on our decisions in *Stipetich* and *Peters* as support, even going so far as to assert that *Stipetich* is "on-point and controlling." *Id.* at 95.

*Gallego* is particularly instructive. In that case, the Drug Enforcement Agency and the Oakland County Police entered into a written agreement with the defendant in which they promised they would not prosecute him if he returned $33,000 worth of hidden "buy" money. *See id.* at 470-71. The defendant returned the money, but several months later was charged with delivery of cocaine because the "prosecutor did not feel bound by the agreement[.]" *Id.* at 471. On appeal, the Michigan Supreme Court rejected the defendant's position that specific performance of the agreement was required. It reasoned that this remedy was inappropriate based on a number of factors, including: "the instant case involves a non-plea agreement for which specific performance amounts to preclusion of an otherwise valid prosecution"; the decision not to prosecute "stemmed not from those legitimate considerations involved in plea bargaining or in authorized grants of immunity, but rather from less worthy considerations such as the embarrassment resulting from the loss of the buy money"; and there existed "an alternative remedy which essentially restores defendant to the position he enjoyed prior to making the agreement in question[.]" *Id.* at 474-75.[5] On this last score, the court explained:

> Since suppression or exclusion cures defendant's detrimental reliance, specific performance is not necessary to return defendant to the position he enjoyed prior to making the unauthorized, non-plea agreement at issue in this case. Moreover, we are not required, as a result of the "constable's blunder," to place defendant in a better position than he enjoyed prior to making the agreement with the police. As a result, we agree with the . . . decision to suppress or exclude the written agreement and the buy money.

*Id.* at 475-76 (footnote omitted).

---

[5] Of course, it was also relevant to the *Gallego* court's analysis "that the police lacked the authority to make a binding promise of immunity or not to prosecute." *Gallego*, 424 N.W.2d at 473. But the fact that the non-prosecution decision at issue here emanated from Castor rather than a police officer is of no moment. As already explained, district attorneys in this Commonwealth lack the power to convey permanent non-prosecution agreements outside of the normal plea-bargaining and immunity contexts.

I would reach a similar conclusion in this case. Specific performance is only appropriate in drastic circumstances, such as where the defendant detrimentally relies on an inducement and cannot be returned to the status quo *ante*. Here, although Cosby detrimentally relied on Castor's inducement, we can return him to the position he enjoyed prior to being forced to surrender his Fifth Amendment right against self-incrimination by simply suppressing the evidence derived from the civil depositions at which he testified. We should not use Castor's "blunder" to place Cosby in a better position than he otherwise would have been in by forever barring his prosecution. "So drastic a step" merely "increase[s] to an intolerable degree interference with the public interest in having the guilty brought to book." *Blue*, 384 U.S. at 255.[6]

Chief Justice Baer joins this concurring and dissenting opinion.

---

[6] As the majority's decision to discharge Cosby renders his remaining claim moot, I express no opinion on it.